STATE OF TENNESSEE
COUNTY OF HAMILTON
IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT
CHATTANOOGA

| | |
|---|---|
| **CATHY EPPINGER** | **Civil Action No: 1:21-CV-00268-KAC-CHS** |
| Plaintiff, | |
| V. | |
| **UNIVERSITY OF TENNESSEE** | **JURY TRIAL DEMAND** |
| **AT CHATTANOOGA** | |
| Defendant, | |

FILED

DEC 2 8 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

---

**PLAINTIFF'S REPLY TO DEFENDANT'S ANSWER**

---

**Comes Now** the *Pro Se* Plaintiff Cathy Eppinger ("Eppinger"), *Pro Se* Plaintiff in the

above styled action, and in response to defendant's answer to plaintiff's Third Amended

Complaint [Doc 61], Plaintiff response with the Honorable U.S. District Court, as *Pro Se*, herein

will show before the Honorable U.S. Court all facts, circumstances, detailing among other

things, for **Damages** and **Demand for Jury Trial,** declares, as follows:

**PLAINTIFF'S ARGUMENT: DEFENDANT INFRINGED ON PLAINTIFF'S RIGHT TO PRIVACY**

The university (Defendant), infringed on Plaintiff Eppinger right to privacy when it

disclosed her personal records who was a former employee without her consent, and the

individuals, Tina Caiazza, Paralegal, and Michael D. Fitzgerald, attorney, who retrieved Plaintiff

Eppinger's personal information (PII) could not provide the following: (1) Health Coverage (2)

taxes purposes information (3) employment for Plaintiff Eppinger. Additionally, Plaintiff

Eppinger is not a Criminal and her birthday nor her social security number (PII) should not have

1

been disclosed to anyone without her consent. In addition to, Counsel Fitzgerald mentioned that this occurred on two occasions, upon information and belief, this would be considered, two counts, without Plaintiff Eppinger's consent. Plaintiff Eppinger provided her (PII) to the university for employment purposes only, and the university had no right to issue her (PII) to whomever they elect. This is also in direct contract to why Plaintiff Eppinger was terminated.

**DIRECT CONTRAST OF ACCUSATION IN PLAINTIFF'S EPPINGER TERMINATION LETTER DATED SEPTEMBER 13, 2022, ATTACHED, HEREIN, AS EXHIBIT 45**

According to Plaintiff Eppinger's termination letter dated, September 13, 2022 for identical accusations in contrast to allegations [Doc 61], exhibit 27, page 2 of 14, 3rd paragraph of termination letter reads as follows, "misuse/unauthorized disclosure of university records, attached, herein, as Exhibit 1 second page. Policy HR0580 – code of conduct, which requires "access, use, protect, disclose, preserve and dispose of confidential information in compliance with applicable, regulation, contracts, and university policies. Additionally, Plaintiff Eppinger accessed McClellan time sheet." Here, policies are only worthwhile if the university disseminate them, train leadership and enforce them on "all" employees, not just one, Plaintiff Eppinger, who was engaged in protected activity as of year July 2020. Upon belief and information, this is disparate treatment, and well as, violation of The Privacy Act of 1974 5 U.S.C.§552a. Plaintiff Eppinger did not consent to share her (PII) with Tina Caiazza, Paralegal, and Michael D. Fitzgerald, attorney. The question, did Plaintiff Eppinger provide her (PII) to the above parties, Fitzgerald or Caiazza, and/or did the university provide this information, and if so, did the university have consent from Plaintiff Eppinger.

2

In response to Defendant's answer to Plaintiff's Third Amended Complaint [Doc 61],

Plaintiff, declares, as follows:

1.      Plaintiff Eppinger admits paragraph 1 is a legal statement requires neither admission or denial.

2.      Plaintiff Eppinger admits paragraph 2. Plaintiff Eppinger is an African American, female, over the age of forty and wears and hearing aids, sufficient information attached, [Doc 61], Exhibit 1.

3.      Plaintiff Eppinger admits paragraph 3. Plaintiff was employed as an Administrative Assistant III until her termination on September 13, 2022.

4.      Plaintiff Eppinger denies university answer in paragraph 4. Plaintiff Eppinger is in fact a member of protected class, denied equal access, and did not have equal opportunity as her "white" counterparts who were in year 2015 Administrative Assistant and or Assistant as plaintiff Eppinger with identical duties has Plaintiff Eppinger, follows as:

| | | |
|---|---|---|
| ▪ Recurring Duties | All assistants throughout the university Exhibit 36 of 13 | |
| ▪ Amanda Winesburgh | Business Manager | [doc 39, page 7 filed July 21,2022] |
| ▪ Sandra Jones | Business Manager | Exhibit 36 of 13 |
| ▪ Nikki Ellis Bonnington | Assistant Director | Exhibit 36 of 13 |
| ▪ Mary Lee King | Assistant Director | Exhibit 36 of 13 |
| ▪ Rebekah Caldwell | Business Manager | Exhibit 36 of 13 |

5.      Plaintiff Eppinger denies university answer in paragraph 5. Kelsey Battles "under" age of 40 white female promoted System Analysis with two "direct reports," Jean Betters and Kenneth Hood. Battles has no prior supervision experiences, yet; given opportunity in preparation for lead roles.  Linda Sue Stephens, trains "only" Amanda Winesburgh on Budget operations, although Plaintiff Eppinger has experience, but; not selected for that she

3

routinely assisted to. Additionally, Stephens, retiree in November 2020 to train only

Winesburgh, yet; Plaintiff Eppinger act as her assistant.

6.     Plaintiff Eppinger admits to paragraph 6. Court has jurisdiction over this matter.

7.     Plaintiff Eppinger admits to paragraph 7. Venue is proper

8.     Plaintiff Eppinger admits to paragraph 8, and declares, as follows:

- Filed charge of Discrimination     EEOC July 1, 2020
- Transferred to (THRC)              THRC#3-025-21;
- Filed circuit court                July 1, 2021 [Doc# 21C623]
- Request right to sue               June 2021
- Received right-to-sue letter       July 8, 2021

9.     Plaintiff Eppinger denies, university answer to paragraph 9. Plaintiff Eppinger is

indeed, the only African American, with identical assigned duties as her Caucasian counter

parts, listed, herein, paragraph 4 & 5, whom have had access to promotional opportunities,

which Plaintiff Eppinger, indeed, meets qualifications, as well.

10.    Plaintiff Eppinger admits, university answer, paragraph 10, and says, in addition

to Discrimination, filed Discrimination based on race, disability, and age, and received

noticed of right-to-sue letter on April 28, 2022 and EEOC #494-2021-0236 was dismissed

due to court filing and two investigation was not need, per EEOC commissioner.

11.    Plaintiff Eppinger denies university answer in paragraph 11, university/counsel of

records received all information, and declares, as follows:

- EEOC                    # 494-2022-02365 attached, hereto, as Exhibit 37
- Performance Review      # [Doc # 61], Exhibit 8 of 10 page 7
- Perf Improv. Pln. (PIP) # [Doc #61], Exhibit 8 of 10 page 6

4

- Exclusion from UTC Event          [Doc 61] Exhibit, 31 page 18
- Plaintiff assigned duties posted   [Doc 61], Exhibit, 15 of 2 page 10
- HR disclosed Plaintiff Eppinger (PII)  [Doc 61], Exhibit, 3 of 3 page 3

12.     Plaintiff Eppinger admits, university answer, plaintiff received a performance review score of 13 for 2021-year evaluation, and she was not eligible for a raise. Plaintiff Eppinger denies university answer, all allegations in paragraph 12, and declares, as follows:

- Excluded from UTC Event         [Doc 61] Exhibit, 31-page 18, witness Jean Betters
- Termination letter              [Doc 61] Exhibit, 27 of 14, page 16, Sept. 13, 2022
- Right-to-sue letter issued       [Doc 61] Exhibit, 2 of 3, pages 3-4

13.     Plaintiff Eppinger admits, university answer in paragraph 13, it is a legal conclusion that requires neither an admission nor a denial.

14.     Plaintiff Eppinger admits, university answer in paragraph 14, plaintiff is a member of the protected class, an African-American, and over the age of 40. Plaintiff Eppinger denies, university answer that it lacks information when supported document, indicates that plaintiff Eppinger has loss of low tones and wears a hearing aid, [Doc 61], Exhibit 1 page 2.

15.     Plaintiff Eppinger admits, university answer in paragraph 15, plaintiff is a resident of the State of Tennessee, and of Hamilton County.

16.     Plaintiff Eppinger admits, university answer in paragraph 15, plaintiff was employed with the university until her termination on September 13, 2022.

17.     Plaintiff Eppinger admits, university answer in paragraph 15, an employer as defined by Title VI, Title VII, ADA, and the ADEA.

18.     Plaintiff Eppinger admits, university answer in paragraph 18, it is an employer that can be served with process through the university's Office of General Counsel.

## DISCRIMINATION BASED ON RACE AND GENDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 200E

19.     Plaintiff Eppinger admits, university answer in paragraph 19. Plaintiff began working for the university in 2011 as Administrative Assistant III in Occupational Therapy Department.

20.     Plaintiff Eppinger denies, university answer in paragraph 20. After Dan Webb, Human Resources, reversed the force ([Doc 61], Exhibit 4 of 17 page 5), of Plaintiff Eppinger to apply out of her positions, weeks later the Dr. Rutledge, whom assisted in the force decided to create a re-organization. Plaintiff Eppinger was then stripped from her duties, unlike two other Administrative Assistant, upon information and belief, were allowed to stay within their position until hired in new positions. Upon belief and information, it is much easier for a Caucasian American to seek employment within the university than for an African- American, especially; one who has filed a complaint. Plaintiff Eppinger had applied more than 15 jobs ([Doc 61], Exhibit 4 of 17 page 5), in which she qualified, and did not receive not one call. Upon believe and information, black balled, as a whistle blower.

21.     Plaintiff Eppinger denies, university answer in paragraph 21. In 2014, Plaintiff Eppinger did in fact (1) asked Dr. Susan McDonald, why a certain applicant was not admitted in the Occupational Doctorate program, and this applicant was indeed a black African-American applicant. Weeks later, after been employed in the department for over

6

2.5 years. Plaintiff Eppinger was called in a meeting with Dr. McDonald. McDonald advised and instructed, Plaintiff Eppinger, that she was not a good fit, and instructed her to seek other employment within the university. Plaintiff Eppinger follow Dr. McDonald's instruction, attached, herein, as Exhibit 38 front and back, as well as, [Doc 61], Exhibit 4 of 17 page 5. Upon information and belief there has never been an African American student in the Occupational Therapy department from 2015-2022.

22.    Plaintiff Eppinger admits, university answer in paragraph 22. Indeed, there was a "reorganization," based on written information for budgetary needs. Plaintiff Eppinger denies, last two line of the university answer in paragraph 22. The circumstantial evidence, prior to "reorganizational budgetary needs," is in question. True analysis prior to "reorganization:" (1) why and was Plaintiff Eppinger forced to apply out of position (2) why was there a need for Plaintiff Eppinger to file a complaint with Human Resources, pertained to force and harassment (3) why did Dan Webb, Human Resources reversed the force, and write," you cannot be forced to resign your position or transfer to another position." [Doc 61], Exhibit 4 of 17 page 5. Upon belief and information, when "force" method failed, Dr. Susan McDonald and Dr. Valerie Rutledge, new plan merged, "reorganization," a method employers, often use to hide or removed unwanted whistle blowers. Additionally, Amanda Winesburgh reported to Dr. Valerie Rutledge as Administrative Assistant, prior to her "reclassified position" Projector Coordinator. Discrimination, an African American "lateral" move at $12.30. hourly, verses her Caucasian counterpart "reclassified position with $19.52 hourly with identical duties.

23.     Plaintiff Eppinger admits, university answer in paragraph 23. Plaintiff Eppinger duties were transferred to an alternative employee.

24.     Plaintiff Eppinger denies, university answer in paragraph 24. This planned "reorganizational for budgetary needs" did not take place until after Plaintiff Eppinger filed her complaint with Human Resources and Human Resources reversed the force.

25.     Plaintiff Eppinger admits, university answer in paragraph 25. Plaintiff Eppinger hired and interviewed for Administrative Assistant III in the department of Facilities at $12.30 hourly.

### DISPARATE TREATMENT BASED ON RACE

26.     Plaintiff Eppinger admits, university answer in paragraph 26. Plaintiff Eppinger came to the position with a Bachelor of Science degree from Covenant College in Organizational Management, and Associated degree of Applied Science in Office Administration and work with the UTC for over 10 years without being promoted, a 2nd copy is attached, herein as, Exhibit 6 of 3 for the university, counsel Fitzgerald records.

27.     Plaintiff Eppinger admits, university answer in paragraph 27. Indeed, Plaintiff Eppinger received favorable performance reviews from 2015 to 2019, and did not receive a review for 2020, as her counterparts in the Facilities department. Plaintiff Eppinger denies, university allegation of violation of code of conduct, and says, university has no proof, other than heresy, false written information, and leadership did not adhere to code of conduct protocol, Policy HR0580. There were no verbal warnings or written signed documentation of unsatisfactory work performances prior to her performance review on May 12, 2022, [Doc 61], Exhibit 20 of 4.

8

28.    Plaintiff Eppinger denies, university answer in paragraph 28. Despite Eppinger's advance degrees and performance history, her peers have indeed, been treated more favorable, with access to opportunities than she has and, in the past, held the identical position, as follows: (1) Amanda Winesburgh, Business Manager, Sandra Jones, Business Manager, and Niki Ellis Bonnington, Director of Accounting, just to name a few, attached, herein, as Exhibit 36 of 13.

29.    Plaintiff Eppinger admits, university answer in paragraph 29. Plaintiff Eppinger is the only female, African American, Administrative Assistant III, in the Facilities, Planning and Management department.

30.    Plaintiff Eppinger was indeed equal qualified as the above-mentioned ladies.30. Plaintiff Eppinger was indeed equally qualified, as her below-mentioned former colleagues. All Caucasian former Administrative Assistants are here with identical assigned duties: (1) Amanda Winesburgh, Business Manager, Sandra Jones, Business Manager, and Niki Ellis Bonnington, Director of Accounting, just to name a few, attached, herein, as Exhibit 36 of 13. The question: (1) why, was Plaintiff Eppinger given identical opportunities, (2) why was a retiree approved to returned, as a part-time employee at pay rate of $26-$27 hourly, who is also, Caucasian, and that Plaintiff Eppinger assisted.

**UNEQUAL PAY PERFORMANCE**

31.    Plaintiff Eppinger admits, university answer in paragraph 31. Linda Sue Stephens conducted Plaintiff's annual performances evaluations, and those evaluations were indeed

9

favorable, however, Plaintiff Eppinger denies that the pay increase did not reflect the report Stephens had written, results were often cross the board raise at 2%.

32. Plaintiff Eppinger denies, university answer in paragraph 32. Plaintiff Eppinger received the same favorable review on her yearly skills assessment, as her peer, Eppinger's compensation was not awarded at the same rate, as her non-African American Administrative Assistant.

33. Plaintiff Eppinger admits, university answer in paragraph 33. In 2018, Plaintiff Eppinger did address the issue of unequal pay to her supervisor Linda Sue Stephens. Plaintiff Eppinger denies the university answer in the remaining two lines of paragraph 33, if the university, admits that Plaintiff Eppinger indeed address the unequal pay, Plaintiff Eppinger had to share, with Stephenson, the two employees who received higher pay. Here, a comparison had to made.

34. Plaintiff Eppinger admits, university answer in paragraph 34. Plaintiff Eppinger did receive a pay raise with back pay in 2018, however, Plaintiff Eppinger denies, university answer, retroactive pay was equally to Kelsey Battles, and Amethyst Steele, who are white Caucasian, with less duties.

35. Plaintiff Eppinger admits, university answer in paragraph 35. Plaintiff Eppinger did receive a score of 23 for her performance year 2019, the score later changed after she inquired to Stephens that it did not reflect the written report. Plaintiff Eppinger denies, university answer, the score increased from 23 to 25 after Plaintiff Eppinger inquired of Stephens. According to Stephens, Tom approved the score, [Doc 61], Exhibit 7 of 16.

10

36.     Plaintiff Eppinger denies, university answer in paragraph 36. After review year was completed for year 2018, Plaintiff Eppinger stated to Donnie Hodge, Maintenance Superintendent of Facilities, "Yay, we get a 2% raise coming, Hodge responded, we can get up to 5% if you received a 25 score on your performance evaluation, what did you received, Plaintiff Eppinger, responded, not sure. Plaintiff Eppinger also, recalled, at one time Stephens mentioned that 5% notification is sent separately, to all supervisors, in a memorandum style.  Plaintiff Eppinger did not discuss further because she knew it would never happen to her.

37.     Plaintiff Eppinger admits, university answer in paragraph 37. Plaintiff Eppinger denies, university answer in the remaining line, each year that she received a performance in the Facilities department she received a 23-scorem until her dispute for performance year of 2019.

38.     Plaintiff Eppinger admits, university answer in paragraph 38. Indeed, Plaintiff Eppinger received a 23 score for the years in facilities, but only received a 25-score for year 2019 when she stated to Stephens that the 23-score given did not reflect the written report. This is when with the approval of Tom Ellis, per Stephens to change the score to 25. The 25 score was only given when she disputed. Plaintiff Eppinger denies, university answer in the remaining lines, and says, the university policy speaks for themselves, leadership team, as well as Human Resources could not produce signed documentation between McClellan and Plaintiff Eppinger to support to support written policy, [Doc 61], Exhibit 23, page 14, Exhibit 21 of 2, page 13.

11

39.     Plaintiff Eppinger admits, university answer in paragraph 39. Indeed, university received notice of complaint filed by Plaintiff Eppinger.

40.     Plaintiff Eppinger admits, university answer in paragraph 40. Indeed, university notified Plaintiff Eppinger of a pay increase of $3.86. Plaintiff Eppinger denies, university answer and says, the raise had some connection with the THRC notification and Plaintiff Eppinger complaint, and upon information and belief, the raise is not in-line with equal opportunity.

**UNEQUAL ADVANCEMENT OPPORTUNITIES BASED ON RACE AND GENDER DISCRIMINATION-PLAINTIFF EPPINGER DENIED OPPORTUNITY**

41.     Plaintiff Eppinger admits, university answer in paragraph 41. On May 28, 2018, Amanda Winesburgh, a white female, hired as a non-exempt Project Coordinator, she is over the age of 40, and was reclassified with a pay increase. Plaintiff Eppinger denies, university answer in remaining line in paragraph 41, and her argument is as follows: (1) prior to Winesburgh, new role, as Project Coordinator, Winesburgh was and Administrative Assistant as her African-American counterpart, Plaintiff Eppinger, with identical duties, [Doc 61], Exhibit 12 of 10, page 8. Plaintiff Eppinger, did not have identical access to the role of Project Coordinator, as her Caucasian, counterpart, whom perform identical duties, prior to her reclassification. Additionally, upon Winesburgh arrival in facilities, she researched construction invoices, as Plaintiff Eppinger researched utilities invoices.

42.     Plaintiff Eppinger admits, university answer in paragraph 42, and says, prior to Winesburgh, new role, as Project Coordinator, Winesburgh was and Administrative

Assistant as her African-American counterpart, Plaintiff Eppinger, and that all Administrative Assistant does identical duties, [Doc 61], Exhibit 12 of 10, page 8.

43.     Plaintiff Eppinger admits, university answer in paragraph 43. On April 1, 2020 Winesburgh was promoted to exempt status. Plaintiff Eppinger, asked, Tom Ellis if she could become exempt status, Ellis, stated that Plaintiff Eppinger did not fall within policy guidelines, Plaintiff Eppinger, asked Ellis, what are the guidelines, Ellis stated, he was not sure of guidelines. Both Ellis and Winesburgh are under identical guidelines, exempt-status.

44.     Plaintiff Eppinger admits, university answer in paragraph 44. April 20, 2020, Winesburgh was promoted to Business Manager at a pay rate of 32.18 hourly, job was not posted on the university's job website. Plaintiff Eppinger denies, university answer in the final lines of paragraph 44. Plaintiff Eppinger does monthly payroll, and noticed that Winesburgh had been retroactive, with a pay increase of $40.52 hourly, this was after Plaintiff Eppinger's filed complaint, her complaint was completely ignored. Upon information and belief, the leadership team, as well as, HR support Ellis's employment practice.

45.     Plaintiff Eppinger admits, university answer in paragraph 45. Debby Corey is a white female, over the age of 40, promoted to exempt-status with a pay increase. Plaintiff Eppinger denies, university answer in final line in paragraph 45, Corey does identical duties as [Doc 61], Exhibit 12 and Exhibit 13. Again, every support staff adhere to this exhibit.

13

46.     Plaintiff Eppinger admits, university answer in paragraph 46. Indeed, Kelsey

Battles is a white female under the age of 40. Plaintiff Eppinger denies, university answer in

final line, Battles has no supervisor experience. Battles, too, only entered data... work

orders in field screen, as one of Plaintiff Eppinger job responsibilities, as she enter identical

information in a field screen, and she too does not have lead role experience.  Battles was

promoted from a desk clerk, to supervisor with two direct reports in February 2021, after

Plaintiff Eppinger's filed complaint. Upon belief and information, a prepared position for an

up-coming role, Business Manager, attached, herein, as Exhibit 39 front and back.

47.     Plaintiff Eppinger admits, university answer in paragraph 47. Indeed, Brandon

Pratt, under the age 40, African-American, promoted around November 2020, with a pay

increase, with two direct reports, and a former desk clerk with no supervisor experience.

Pratt, too, only entered data... work orders in field screen, as one of Plaintiff Eppinger job

responsibilities, as she enter identical information in a field screen, and she too does not

have lead Role experience. Pratt, too, was promoted after Plaintiff Eppinger's filed

complaint, as well, attached, herein, as Exhibit 39 front and back.

48.     Plaintiff Eppinger denies, university answer in paragraph 48 and says, she has not

been given the same or similar opportunities for advancement to lead roles, and "positions

reclassification opportunities."

49.     Plaintiff Eppinger denies, university answer in paragraph 49 and says, upon

information and belief the university "reclassification" practice is designed to promote

Caucasian employees and when a complaint is filed, often an African- American is staged only to cover their wrongful employment practices.

## THE ROLE OF POSITION RECLAFFICATION DISPARTE

50.     Plaintiff Eppinger admits, university answer in paragraph 50. Laure Pou, HR, via email, typed, Winesburgh was reclassified, as Business Manager, [Doc 61], Exhibit 14 of 2 page 10, speaks for itself. Plaintiff Eppinger denies, university answer in paragraph 50, final line. Plaintiff Eppinger, indeed request criteria and qualification, this was not answered by Pou, [Doc 61], Exhibit 14 of 2, page 10.

51.     Plaintiff Eppinger admits, university answer in paragraph 51. The email from Laure Pou, Human Resources, speaks for itself. Plaintiff Eppinger's argument, the university has two Administrative Assistant, identical duties, and only one meets reclassification for Project Coordinator and Business Manager. The university EEO website statement ignored.

52.     Plaintiff Eppinger admits, university answer in paragraph 52. Position number #22000000GQ, for Financial Associate 2, indeed was posted on April 3, 2022, Plaintiff Eppinger's argument and denies, university final line in paragraph 51: (1) the position consisted of Plaintiff Eppinger's current job duties. (2) This position was not a reclassification "unlike" Winesburgh's two position Project Coordinator and Business Manager, specifically for Winesburgh, previously an Administrative Assistant as Plaintiff Eppinger. (3) Here, the contrast is defined as inequality, [Doc 61], Exhibit 15 of 2, page 10.

53.     Plaintiff Eppinger denies, university answer in paragraph 53. [Doc 61], Exhibit 16 of 2, speaks for itself. In addition, this position, too, was not a "reclassification" but to increase pay for two African- American, Myra Armstrong and Frederick Sturdivant.

15

54.     Plaintiff Eppinger denies, university answer in paragraph 54. Plaintiff Eppinger (1) specifically typed Armstrong's resume for the interviewed (2) followed-up with Armstrong on the how the interviewed went with Anthony McClellan, Director of Building Services, attached, herein, as Exhibit 40, created resume by Plaintiff Eppinger for Armstrong on March 6, 2018, and Armstrong can confirm. Question, "why was this "not" a reclassification as the selective group?"

55.     Plaintiff Eppinger admits, university answer in paragraph 55, reclassification for other employee (selective groups), in the past. The university stated, "opportunity for custodial, foreman positions, in this paragraph." Please note these are majority a, "minority group." Plaintiff Eppinger's argument, and in contrast to reclassification listed [Doc 61], page 11: (1) Here, should there be opportunity in "all" areas, as well? (2) again, the contrast is defined as inequality.

**RETALIATION AFTER ENGAGING IN PROTECTED ACTIVITY & DISPARATE TREATMENT**

56.     Plaintiff Eppinger admits, university answer in paragraph 56. McClellan did make contact via message board on December 31, 2020. Plaintiff Eppinger denies, university answer in remaining paragraph, and argues: (1) if Plaintiff Eppinger felt comfortable, regarding the three-way call, why, was there a need to reschedule a face-to-face meeting for January 8, 2021. (2) The text message, "clearly indicates," Plaintiff Eppinger was shaking by the phone call, [Doc 61], Exhibit 17 of 3, page 11.

57.     Plaintiff Eppinger denies, university answer in paragraph 57. Indeed, the meeting was in fact an "interrogated meeting," the meeting did not fall as McClellan as planned,

16

Corey McGraw, Supervisor of Building Services, enlighten, Plaintiff Eppinger, thereafter, and McClellan "slammed invoices" in Plaintiff Eppinger inbox, thereafter.

58.    Plaintiff Eppinger admits, university answer in paragraph 58. Indeed, Anthony McClellan office area is near Plaintiff Eppinger. Plaintiff Eppinger denies, university answer in remaining lines of paragraph 58, at all times that Winesburgh approached Plaintiff Eppinger's desk area, there has been good conversation both professional and personal, [Doc 61], Exhibit 18 of 8 page 12 are examples of conversations via email, as well.

59.    Plaintiff Eppinger denies, university answer in paragraph in 59. [Doc 61], Exhibit 18 of 8 page 12 are examples of conversations via email, therefore, evidence speaks for themselves.

60.    Plaintiff Eppinger denies, university answer in paragraph in 60. Indeed, Plaintiff Eppinger, once shared with McClellan that no matter what treatment received from Winesburgh, work encroachment, etc., she will always show love to her.

61.    Plaintiff Eppinger denies, university answer in paragraph 61. Indeed, Plaintiff Eppinger did in fact invited Winesburgh to her worship service and of course, we both sat on the same pew, and of course, she was my invited guest.

62.    Plaintiff Eppinger denies, university answer in paragraph 62. Linda Sue Stephens and Debby Corey can confirm that Plaintiff Eppinger had purchased all three ladies' sweaters. McClellan, as well as, office staff can confirm friendly conversations.

63.     Plaintiff Eppinger denies, university answer in paragraph 63, Donnie Hodge, Kenny Tyler, Brandon Pratt, Chelsey Ewing, and Linda Sue Stephens can confirm, Plaintiff Eppinger with Winesburgh was often friendly. See paragraph 62, and [Doc 61], Exhibit 18 of 8 page 12.

64.     Plaintiff Eppinger denies, university answer in paragraph 64. McClellan method of communication with Plaintiff Eppinger was often via email, and upon information and belief a "pretext" to have Plaintiff Eppinger terminated based on her response via email.

65.     Plaintiff Eppinger admits, university answer in paragraph 65. Plaintiff Eppinger received a final written warning. The Exhibit 19 of 2, [Doc 61], that university cites consist of false "heresy," not factual evidence. Plaintiff Eppinger reference Exhibit 41 of 6 and [Doc 61], Exhibit 20 of 4, the university failed to cite its policy on disciplinary action, that mention sequential "warnings", which was "not" offered to Plaintiff Eppinger in which she inquired of Laure Pou, attached herein, as Exhibit 20 of 4 and 41 of 6.

66.     Plaintiff Eppinger denies, university answer in paragraph 66. McClellan stated in the meeting of April 16, 2021, he overheard Winesburgh and Plaintiff Eppinger discussion regarding the new phone. The two-office location would make this impossible, and the write-up stated "he learned" of the phone discussion, which is "heresy."

67.     Plaintiff Eppinger denies, university answer in paragraph 67. This is false, Linda Sue Stephens was in the office prior to Winesburgh and her phone was an old phone as the rest of the facility team.

68. Plaintiff Eppinger denies, university answer in paragraph 68. Stephens can confirm that she had an old phone.

69. Plaintiff Eppinger admits, university answer in paragraph 69. [Doc 61], Exhibit 19 of 2 speaks for themselves, indeed Winesburgh coordinate new phone insulation.

70. Plaintiff Eppinger denies, university answer in paragraph 70. [Doc 61}, Exhibit 20 of 4 page 13 indicates that the university did not follow written policy, "nor," no-specific description of the acts in question, which constituted aggressive behavior.

71. Plaintiff Eppinger denies, university answer in paragraph 71. There is not one written warning prior to April 16, 2021, final written warnings. [Doc 61], Exhibit 21 of 2, page 13, email speaks for themselves.

72. Plaintiff Eppinger admits, university answer in paragraph 72. May 12, 2022, Plaintiff Eppinger received a 13-score performance review, put on Performance Improvement Plan (PIP), and wrote disagree then initial. Plaintiff Eppinger denies, university answer, final line of paragraph 72. The report does not indicate factual evidence only "opinion" and "heresy." Additionally, the reports do not indicate Plaintiff Eppinger's accomplishments and training for performance year 2021, this in itself a pretext to Plaintiff Eppinger termination on September 13, 2022.

73. Plaintiff Eppinger admits, university answer in paragraph 73 of recording, only. Plaintiff Eppinger denies, university answer of last two sentence, paragraph 73, and says, as follows: (1) McClellan could not provide written warnings of face-to-face conversations that

19

would indicate to Plaintiff Eppinger, a performance issue, policy HR0129 was not followed as outlined for policy #2A-F. (2) Laure Pou, Human Resources, indeed, stated just because policy states, does not mean it should happen.

74.    Plaintiff Eppinger admits, university answer in paragraph 74. Indeed, no "face-to-face" signed documents, prior to May 12, 2022 performance evaluation and Performance Improvement plant (PII), no written disciplinary documents, prior to April 16, 2021, final written warning, and denied access to chancellor, after Plaintiff Eppinger was advised, per Laure Pou, "employees do not need to seek approval," [Doc 61], Exhibit 24 of 4.,46

## UTC POLICY APPLIES TO EMPLOYEES AND NOT LEADERSHIP – DISCRIMINATION DISPARATE TREATMENT

75.    Plaintiff Eppinger denies, university answer in paragraph 75 and says the following: (1) email should never be intended to be a communication channel for sending sensitive information, it is (2) a bad practice, and Plaintiff Eppinger did not consent and (3) again, direct contrast to one of Plaintiff Eppinger's termination reasons, "misuse/unauthorized disclosure," [Doc 61], Exhibit 3 of 3, page 3, and Exhibit 27 of 14 page 16, attached, herein as Exhibit 45.

76.    Plaintiff Eppinger admits, university answer in paragraph 76. Laure Pou remains employed at the university; Plaintiff Eppinger terminated. Plaintiff Eppinger denies, university answer in remaining phrase, and says, one of the reasons, the university terminated plaintiff Eppinger, she shared proof of McClellan's harassment, which is

identical to Pou, she too, shared Plaintiff Eppinger's (PII) information, disparate treatment [Doc 61], 27 of 14, page 16 speaks for themselves.

77.     Plaintiff Eppinger admits, university answer in paragraph 77. Anthony McClellan remains employed at the university; Plaintiff Eppinger terminated. Plaintiff Eppinger denies, university answer in remaining phrase, and the termination letter speaks for themselves, [Doc 61], 27 of 14, page 16. This too, disparate treatment.

78.     Plaintiff Eppinger admits, university answer in paragraph 78. Both Tom Ellis and Laure Pou are employed at the university. Plaintiff Eppinger denies, university answer in final line, paragraph 78. Tom Ellis does not honor the EEO statement that is posted on the university website, and opportunity is not offered to all employees, disparate treatment.

79.     Plaintiff Eppinger admits, university answer in paragraph 79, and adds, that policy states performance due date is March 31st and Plaintiff Eppinger performance review was done on May 12, 2022, two months past due. [Doc 61], Exhibit 9 of 6. One of Plaintiff Eppinger termination reason, "she did not submit a self-development plan, timely," [Doc 61], Exhibit 27 of 14.

80.     Plaintiff Eppinger admits, university answer in paragraph 80. Indeed, she applied for Procurement card on May 23, 2022. Plaintiff Eppinger denies, university answer in final line of paragraph 80, and says, although McClellan was sent computerized notification over 18 times, upon belief and information, he intentionally denied. Plaintiff Eppinger shared

21

report with Human Resources, Pou; later, Plaintiff Eppinger was put on administrative leave, then terminated.

81.    Plaintiff Eppinger admits, university answer in paragraph 80. Indeed, the termination letter stated, self-development plan in one-week, due date May 19, 2022. Plaintiff Eppinger denies, university answer of "she failed to do so," Pou, McClellan, and Plaintiff Eppinger, knew that the PII/performance review  was in rebuttal stage.

82.    Plaintiff Eppinger denies, university answer in paragraph 82, and her argument: (1) per written report, a self-development plan due date, May 19, 2022 (2) on dates, June 19, 2022, July 19, 2022, August 16, 2022, and August 30, 2022, the date of the meetings, why; was there not a produced document, that stated, Plaintiff Eppinger, failed to produce a written self-development plan, this document should have been signed by all three parties, Pou, McClellan and Plaintiff Eppinger. Plaintiff Eppinger admits, university answer in the following lines, it did "not" note any of her 2021 training and accomplishment in performance review, or termination letter, [Doc 61], Exhibit 22 of 3 page 13. Plaintiff Eppinger denies, university answer, regarding 10-hour training was not satisfactory, her argument: (1) The training certificate are based on accusation written in the report (2) there were "no" written signed documentation by Pou, McClellan and Eppinger, that stated the 10-hour training did not satisfy requirement.

83.    Plaintiff Eppinger denies, university answer in paragraph 83, and says, leadership team cannot provide written documents, to prove policy HR0129 item #2(A-F) was followed as written, [Doc 61], Exhibit 23.

22

84.     Plaintiff Eppinger admits, university answer in paragraph 84, and says, meeting May 12, 2022, August 16, 2022 and August 30, 2022 did not have the next level of administration signature, ([Doc 61], Exhibit 21 of 2), Tom Ellis, therefore; he, too, knew the performance review and PIP was in rebuttal stage. Plaintiff Eppinger denies, university answer, separate, both were in rebuttal stage. Upon belief and information, both reports were at a pause because the accusations written, had no proof, and McClellan, Pou and Ellis, did not know how to respond.

85.     Plaintiff Eppinger admits, university answer in paragraph 85. Indeed, Plaintiff Eppinger met with Tom Ellis, McClellan's direct report and stated the report appears to be retaliatory and a form of harassment.

86.     Plaintiff Eppinger admits, university answer in paragraph 86. McClellan did not provide any "face-to-face" signed documentation that would indicate to her that she was not meeting expectation.

87.     Plaintiff Eppinger admits, university answer in paragraph 87. Indeed, Ellis advised Plaintiff Eppinger to submit a rebuttal and she submitted her rebuttal on May 18, 2022 to Human Resources.

88.     Plaintiff Eppinger denies, university answer in paragraph 88 and says, per Laure Pou email dated June 22, 2022 speak for themselves, rebuttal materials were never covered in meeting, June 15, 2022, with Laure Pou, [Doc 61], 26 of page 16.

89.     Plaintiff Eppinger denies, university answer in paragraph 89. Plaintiff Eppinger's argument: (1) There have not been one produced document from McClellan that indicate proof of his written accusations, therefore, all is a pretext to Plaintiff Eppinger's termination due to her engaged in protected activity, harassment.

90.     Plaintiff Eppinger admits, university answer in paragraph 90. Indeed, she notified the leadership team of harassment and discrimination numerous times and was ignored.

91.     Plaintiff Eppinger admits, university answer in paragraph 91. Indeed, she was terminated. Plaintiff Eppinger denies, university answer in final line, HR did not acknowledge proof, she shared regarding McClellan harassment.

92.     Plaintiff Eppinger denies, university answer in paragraph 91 and argues facts:(1) report indicates approval was ignored over 18 times (2) face-to-face signed documents are not produced (3) report consist of heresy, and opinion, therefore; pretext to Plaintiff Eppinger's termination

93.     Plaintiff Eppinger denies, university answer in paragraph 93, her argument: (1) the tormentors were protected, (2) Policy HR0280 and HR0280 was not honored by the creator, the university (3) the tormented was terminated for working, as her colleagues, (3) the terminated employee filed a complaint, her colleagues did not file a complaint, [Doc 61], Exhibit 29 of 3 pages 17 & 18.

94.     Plaintiff Eppinger denies, university answer in paragraph 94. Plaintiff Eppinger completed a training on August 24, 2022 on "Harassment Prevention for Employees," which

motivated her to shared McClellan's intentional behavior, this behavior indicated proof of retaliation, [Doc 61], Exhibit 30, page 18.

95. Plaintiff Eppinger denies, university answer in paragraph 95. Plaintiff Eppinger asserts: (1) her challenge to the university employment practice, and (2) all things pertained in written reports are false, and factual evidence cannot be produced by the university.

96. Plaintiff Eppinger denies, university answer in paragraph 96, and says, McClellan invited only front office workers, he bypassed Plaintiff Eppinger 's office only to ask front office employees, and he utilized the university vehicle. Jean Better shared the information.

## UNEQUAL DISCIPLINARY TRETMENT BASED ON RACE

97. Plaintiff Eppinger admits, university answer in paragraph 97.

98. Plaintiff Eppinger explains "deviate" monthly employees are paid 100% monthly, and if a monthly employee does not subtract their off days; that employee will be paid at a 100%, as if, they have worked the full month.

99. Plaintiff Eppinger denies, university answer in paragraph 99. Majority of the Facilities team can confirm this lady was never at work. She never turned in her times sheet, therefore; she was paid at 100%. The same with McClellan, Plaintiff Eppinger shared proof of harassment and leadership did not honor their policy HR0220 and HR0280, [Doc 61], Exhibit 29 of 3 page 17 & 18. Here, immediate and appropriate steps were never investigation by the university.

100.    Plaintiff Eppinger denies, university answer in paragraph 100 and says; the above action is in direct contrast to Plaintiff Eppinger final warning, performance review/PIP and termination, no written warnings were given to Plaintiff Eppinger, [Doc 61], Exhibit 20 of 4.

101.    Plaintiff Eppinger admits, university answer in paragraph 101, and says, she was unable to apply for jobs, loss of wages, and health coverage.

102.    Plaintiff Eppinger denies, university answer in paragraph 102, and says, the university is indeed liable for violation of law.

103.    Plaintiff Eppinger denies, university answer in paragraph 103, and say, the university failed and have made numerous mistakes in this matter.

104.    Plaintiff Eppinger denies, university answer in paragraph 104, and says, the university should be liable for this adverse action.

**TRANSFER OF JOB FUNCTIONS AFTER FILING OCTOBER 2020**

105.    Plaintiff Eppinger denies, university answer in paragraph 105, and says, [Doc 61], Exhibit 12 of 10, Page 8, Exhibit 13, page 9, Exhibit 32 page 20, all speak for themselves.

106.    ****Plaintiff Eppinger admits, university answer in paragraph 106, duties were removed from Plaintiff Eppinger to Winesburgh. Plaintiff Eppinger denies, university answer in final line and her argument, and a form of retaliation, [Doc 61], Exhibit 32 of 7:

(1) Plaintiff Eppinger had assigned duties prior to removal, that would put her in line for reclassification, but was not considered.

(2) October 5, 2021 at 11:27 a.m., prior to removal Amanda Winesburgh via email stated, e-termination was completed for an employee.

26

(3) October 5, 2021, Plaintiff Eppinger at 11:32 a.m., inquired of "who completed the e-termination?"

(4) October 5, 2021, Amanda Winesburgh, stated at 12:26 noon, stated, she completed (encroachment).

(5) October 5, 2022 at 2:22 pm., McClellan's intervene, via email announcement, all termination will be routed to Amanda Winesburgh, he stated, the Business Manager will have full responsibility over e-termination, etc.,.

Plaintiff Eppinger argument: Plaintiff Eppinger, at one time performed the task, why was she not considered for the reclassification or why was it not posted for all.

Leadership failed to research: May 12, 2022, Plaintiff Eppinger received her position description (PDQ), that stated, termination is one of her job functions.

****_**The above acts are one of the examples of a crystal-clear retaliation**_. ****

107.    Plaintiff Eppinger admits, university answer in paragraph 107. Indeed, Plaintiff Eppinger job responsibilities were removed. Plaintiff Eppinger denies, university answer in remaining lines of paragraph 107 and says, this is false, the only automated systems were reconciliation and this was not removed, attached, herein as Exhibit 9 of 3.

108.    Plaintiff Eppinger admits, university answer in paragraph 108. Indeed, Plaintiff Eppinger's job responsibilities were removed. Plaintiff Eppinger denies, university answer in remaining lines all a form or retaliation, [Doc 61], Exhibit 32 of 7.

109.    Plaintiff Eppinger denies, university answer in paragraph 109. The termination letter speaks for itself.

110.    Plaintiff Eppinger denies, university answer in paragraph 110, and her argument is as follows regarding conference room: her position description (PDQ) outlines conference

room assignment, and had been scheduling since November 2020, but recently removed and transferred to Jean Betters on March 3, 2022, attached, herein, as Exhibits 42 of 8.

111.    Plaintiff Eppinger denies, university answer in paragraph 111. Plaintiff Eppinger argument regarding construction services invoices: (1) all invoices are processed only one way through accounting services, and (2) construction services invoices are listed in job posting 22000000FQ which pertains Plaintiff Eppinger current role duties as of posted date April 3, 2022, [Doc 61]. Exhibit 15 of 2, page 10.

112.    Here, Plaintiff Eppinger simply stated, all above duties that previously assigned had been removed after Plaintiff Eppinger filed complaint in the year of 2020 which is a violation of title VII and retaliation after engaged in protected activity.

113.    Plaintiff Eppinger denies, university answer in paragraph 113, and says counsel Fitzgerald did not answer correctly, this was not a shift in job responsibilities it was job encroachment, payroll was assigned to Plaintiff Eppinger and Winesburgh completed when plaintiff Eppinger was present, attached herein as Exhibit 44 of 3. Here, April 15, 2022 McClellan disrespected, Plaintiff Eppinger.

114.    Plaintiff Eppinger denies, university answer in paragraph 114, McClellan mocked and laughed and shouted get out of his office, when there was not a caused. McClellan did not respect to be respected.

115.    Plaintiff Eppinger denies, university answer in paragraph 115, and says all this derives from simple request for information and relief of harassment from Winesburgh.

28

116.    Plaintiff Eppinger denies, university answer in paragraph 116. Indeed, McClellan goal was to intimidate Plaintiff Eppinger, (1) walked in her pathway, (2) enter in the doorway, she occupied at that time, when he could simply use the next door.

## DISPARATE IMPACT UNEQUAL ACCESS TO ADVANCEMENT OPPORTUNTIES

117.    Plaintiff Eppinger admits, university answer in paragraph 117. On March 8, 2021, Kelsey Battles, Caucasian female, under age of 40 was promoted with 2 direct reports, this was after Plaintiff Eppinger filed complaint in 2020.

118.    Plaintiff Eppinger denies, university answer in paragraph 118, and she did asked McClellan was the job posted, McClellan's answer "Cathy, I know where you are going with this.

119.    Plaintiff Eppinger admits, university answer in paragraph 119. Stephen's retirement was November 30, 2020.  Plaintiff Eppinger denies, university answer in final line, Stephens was at $26.00 hourly.

120.    Plaintiff Eppinger admits, university answer in paragraph 120. Plaintiff Eppinger, served as backup for Stephens, and Stephens returned in January 2021 part time. Plaintiff Eppinger denies, university answer, Stephens trained Winesburgh on her duties.

121.    Plaintiff Eppinger admits, university answer in paragraph 121. Plaintiff Eppinger servers as a back-up for Stephens. Plaintiff Eppinger denies, university answer in final line, Plaintiff Eppinger does in fact, have requisite knowledge, skills and abilities.

**DAMAGES**

122.    Plaintiff Eppinger denies, university answer in paragraph 122. Plaintiff Eppinger has suffered from: panic attack, depression, humiliation, and hair/weight loss.

123.    Plaintiff Eppinger denies, university answer in paragraph 123.

124.    Plaintiff Eppinger denies, university answer in paragraph 124.

125.    Plaintiff Eppinger denies, university answer in paragraph 125.

126.    Plaintiff Eppinger admits, university answer in paragraph 126. Plaintiff has loss of wages, health coverage as of September 13, 2022.

127.    This paragraph is a legal statement and requires neither an admission or denial

128.    Plaintiff Eppinger denies, university answer in paragraph 128. Plaintiff Eppinger argument, the university has made numerous mistakes, and has violated laws, and Plaintiff Eppinger is indeed, entitled to relief of the items listed in the enumerated paragraph,

**WHEREFORE,** Plaintiff Eppinger prays that this court grant relief.

**Workplace Discrimination "ADVERSE ACTION"**

Count I
**Employment Termination** as September 13, 2022
Count II
**NON- PROMOTION**
Count III
**HARASSMENT AND HOSTILE ENVIRONMENT**
Count IV
**RECEIPT OF AN ADVERSE PERFORMANCE APPRAISAL**
Count V
**EXCLUSION FROM EVENT AND TRAINING**

*Violations: Title VII of the Civil Rights Acts 1964(Title VII") as codified, 42 U.S.C§§ 2000e et seq., Age Discrimination in Employment Act of 1967, (ADEA) as codified, 29 U.S.C. §§ 621 to 634, American with disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA") as codified, 42 U.S.C. §§ 12101 to 12213, collectively the (ADA). The Privacy Act of 1974, 10.10 Civil Rights—Title VII—"Adverse Employment Action" Retaliation Case.*

**Timely filed:** Only July 1, 2021 Plaintiff Eppinger timely filed an initial inquiry with the TN Human Rights Commission (THRC) and received a Right to Sue Letter from the EEOC prior to filing her complaint in Circuit Court of Hamilton County, TN on July 8, 2021. Additionally, right to sue April 28, 2022, and final right to sue letter on November 18, 2022.

**WHEREFORE,** Plaintiff Eppinger respectfully prays that this Court enter judgement as follows:

1. Accept Jurisdiction over this matter

2. Award Plaintiff for present, past, future of lost wages with interest

3. Award Plaintiff compensatory, liquidated, and punitive damages

4. Award Plaintiff Eppinger all court cost and fees incurred in connection with this action

5. Grant Plaintiff Eppinger such additional or alternative relief as the Court deems just and proper

6. Order Defendants to conduct an analysis of the impact it's reclassification policy on members of protected classes, specifically the impact on racial minorities, and person with disability.

7. Award Plaintiff for violation of Title VII Civil Rights Acts 1964, as mended 42. U.S.2000e

8. Award Plaintiff damages from Amanda Winesburgh assigned duties encroachment from 2018 – present, harassment and retaliation

9. Award Plaintiff damages from Anthony McClellan from December 2020 to present for retaliation, bullied, harassment, unjustified low score on 2021 performance evaluation, and hostile work environment

10. Award Plaintiff damages from UTC Human Resources, conspiracy in connection with the actions of both Amanda Winesburgh, Anthony McClellan, Tom Ellis

11. Order Defendant to allow Plaintiff Eppinger to print proof of document from IRIS system in connection with performance review, etc.

12. Award Plaintiff for Unfair Business Practices

13. Award Plaintiff for Psychologist visits including deposits

14. Award Plaintiff from 2019 -2020, 31.25 hourly Project Coordinator role

15. Award Plaintiff from April 2020 - September 2022 at 40.52 hourly, back pay from Business Manager role

16. Economic Damages from September 13, 2022 to present

17. Award Plaintiff for Disparate treatment

18. Informed state representatives of leadership behavior at the university

19. Violation of The Private Act of 1974, careless with sensitive information (PII), Tina Caiazza, and Michael Fitzgerald

20. Award Plaintiff Human Resources disclosed PII without Plaintiff consent

21. Loss of wages, and Health coverage benefits

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing instrument was delivered to the following persons set out below by U.S. mail and postage prepaid

On this _28th_ day of _December_ 20 _22_

UTC of Tennessee at Chattanooga
Yourself Hamadeh Esq.
Office of the General Counsel
615 McCallie Avenue
Chattanooga, TN 37403

UTC of Tennessee at Knoxville
Michael Fitzgerald, Esq
Office of the General Counsel
505 Summer Place, UTT # 1120A
Knoxville, TN  37902

Cathy Eppinger

**STATE OF TENNESSEE**
**COUNTY OF HAMILTON**

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT CHATTANOOGA**

| | |
|---|---|
| **CATHY EPPINGER** | **Civil Action No: 1:21-CV-00268-KAC-CHS** |
| Plaintiff, | |
| V. | |
| **UNIVERSITY OF TENNESSEE AT CHATTANOOGA** | **JURY TRIAL DEMAND** |
| Defendant, | |

---

## VERIFICATION

---

Personally appeared before the undersigned officer duly authorized to administer and receive oaths, Plaintiff **Cathy Eppinger**, who after being duly sworn, states that all of the allegations in the foregoing Verified Complaint for Damages and Demand for Jury Trial are true and correct to the best of her knowledge, information, and belief.

This _28th_ day of _December_ 20 _22_

_____
Cathy Eppinger

SWORN to subscribed before me,

This _28th_ day of _December_, 20 _22_

_____     My commission expires _____ My Commission Expires February 25, 2024
NOTARY REPUBLIC

34

**INDEX OF EXHBITS**

| Document Name | Date | Exhibit | Page |
|---|---|---|---|
| Reconciliation | 2/7/2022 | 9 of 3 | 27 |
| Recurring Duties | 4/4/2013 | 36 of 13 | 3 |
| Charge of Discrimination - Discharged | 9/14/2022 | 37 of 2 | 4 |
| Forced out of role | 2014-2015 | 3 of 3 | 7 |
| Duplicate copies for Counsel Fitzgerald | - | 6 of 3 | 8 |
| Work Control Job Post | 7/29/2021 | 39 front & back | 14 |
| Created Myra Armstrong Resume | 3/18/2018 | 40 | 16 |
| Inquiry of HR – Final Written Warning & outlined Policy HR0525 | 4/20/21 | 41 of 6 | 18 |
| Conference room removal | | 42 of 8 | 27 & 28 |
| Payroll Encroachment | 04/15/2021 | 44 of 3 | 28 |
| Policy HR0580 | - | 45 | 2 & 20 |
| Denied access to Chancellor | | 46 | 20 |

**Eppinger, Cathy**

| | |
|---|---|
| From: | Eppinger, Cathy |
| Sent: | Monday, February 7, 2022 3:48 PM |
| To: | Winesburgh, Amanda |
| Subject: | RE: Electronic Ledger Reconciliation |

Indeed to the Max!

*ALL identical Duties*

From: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Sent: Monday, February 7, 2022 3:46 PM
To: Eppinger, Cathy <cathy-eppinger@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Good deal, I think your going to love this!

From: Eppinger, Cathy <cathy-eppinger@utc.edu>
Sent: Monday, February 7, 2022 3:44 PM
To: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Yes, I am familiar with Pcard reconciliation, I completed this monthly in the OT department. Ms. Sue has always completed Pcard reconciliation here in facilities. I would assume Joey as well.

From: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Sent: Monday, February 7, 2022 3:31 PM
To: Eppinger, Cathy <cathy-eppinger@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

If I can recall correctly this is something that went campus wide (with a few exceptions – facilities being one of those exceptions) around 2018 but I would have to check further for an exact date. One of our goals in facilities this year is to have all ledgers reconciled electronically , we currently have all p-cards being done this way now.

From: Eppinger, Cathy <cathy-eppinger@utc.edu>
Sent: Monday, February 7, 2022 3:28 PM
To: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

What year was this ledger tool introduced?

From: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Sent: Monday, February 7, 2022 3:24 PM
To: Eppinger, Cathy <cathy-eppinger@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Exhibit
9 of 3

Policy requires us to save in two places , but most areas on campus are saving it in IRIS as well as in a shared drive file to satisfy he need to have it saved in two different places. Tom & Anthony's approval of the ledger will act as their signature for the utility ledgers.

Let me know if you need any assistance, it's great process once you get used to it.

Thanks,
Amanda

From: Eppinger, Cathy <cathy-eppinger@utc.edu>
Sent: Monday, February 7, 2022 3:20 PM
To: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Awesome! I like it...does this mean no more printing out hard copy ledgers? I will try it tomorrow and follow-up with you.

From: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Sent: Monday, February 7, 2022 3:13 PM
To: Eppinger, Cathy <cathy-eppinger@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Not really, the p-card requires you to manually attach receipts and allows you to change account #'s and gl codes as needed. These electronic ledgers for the most part already has the documentation ( typically invoices) already attached and you mark them as complete , or pending if needed. They also allow you to make departmental comments , as well as comments that can be seen by anyone with IRIS access. Once you complete the electronic ledger reconciliation it goes through a work flow for Tom or Anthony to approve.

Here is a pdf training with screen grabs that is super helpful:
https://www.utc.edu/sites/default/files/2020-03/electronic-ledger-reconciliation-2019.pdf

Here is the link to a webinar available on K@te : https://tennessee.csod.com/ui/lms-learning-details/app/video/ec3a334a-ce94-40e0-8011-a613558f33d7

From: Eppinger, Cathy <cathy-eppinger@utc.edu>
Sent: Monday, February 7, 2022 2:51 PM
To: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Subject: RE: Electronic Ledger Reconciliation

Is this thru IRIS similar to Pcard reconciliation?

From: Winesburgh, Amanda <amanda-winesburgh@utc.edu>
Sent: Monday, February 7, 2022 2:47 PM
To: Eppinger, Cathy <cathy-eppinger@utc.edu>
Subject: RE: Electronic Ledger Reconciliation



Exhibit

Great , how does 3:00 on Wednesday sound ? It won't take us longer than an hour, if this works for you I will send you a calendar invite and will come to you so you can be on your computer as we go through it.

Thanks,
Amanda

**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Monday, February 7, 2022 2:42 PM
**To:** Winesburgh, Amanda <amanda-winesburgh@utc.edu>
**Subject:** RE: Electronic Ledger Reconciliation

Ok, let me know when you are ready

**From:** Winesburgh, Amanda <amanda-winesburgh@utc.edu>
**Sent:** Monday, February 7, 2022 10:07 AM
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** Electronic Ledger Reconciliation

Good morning Cathy , I am working this week on reconciling the ledgers for all accounts except the utility accounts since I know you do those and wanted to check in to see if you were comfortable with the electronic ledger reconciliation process. If you want me to go over it with you I am more than happy to, just let me know. Our goal is to be reconciling all our accounts electronically by the end of this fiscal year.

Thanks,
Amanda


Exhibit ▮ of ▮

9 of 3

**From:** Bonnington, Nikki
**Sent:** Thursday, April 4, 2013 3:56 PM
**To:** Eppinger, Cathy
**Subject:** Recurring Tasks/Duties

# RECURRING DUTIES

## Daily

Process – COPY - Enter Invoices into shadow budget - and File

Keep track of pending charges

## Biweekly

Entering biweekly TIMESHEETS

### Payroll Distribution Reports

- **ZPR_CC_WBS_DIST** - Cost Center/WBS Distribution Report- Shows who was paid and amount from a particular account. RUN THIS AFTER EACH PAY PERIOD AND/OR MONTH END AND ATTACH TO LEDGERS.

## Detailed Check Registers two day prior to each payroll

**ZPR_DETAIL_CHECK_REG -** This report shows a breakdown of the individuals and their paycheck amounts and which accounts they hit. It should be RUN 2 DAYS PRIOR to payday to make sure everyone is getting paid. Each department must run this report and sign it.

## Monthly

Entering monthly TIMESHEETS

### Payroll Distribution Reports

**ZPR_CC_WBS_DIST** - Cost Center/WBS Distribution Report- Shows who was paid and amount from a particular account. RUN THIS AFTER EACH PAY PERIOD AND/OR MONTH END AND ATTACH TO LEDGERS.

## Detailed Check Registers two day prior to each payroll

Exhibit 36 OF 13

# UNEQUAL ADVANCEMENT OPPORTUNITIES BASED ON RACE

41. The University admits that on or about May 28, 2018 Amanda Winesburgh was reclassified to the non-exempt position of Project Coordinator. The University further admits that Amanda Winesburgh is over the age of 40 and white. The University denies all remaining allegations in paragraph 41.

42. The University admits that prior to being Project Coordinator, Amanda Winesburgh was an Administrative Assistant III.

43. The University admits the allegations in paragraph 43 on information and belief.

44. The University admits that in spring of 2020 Amanda Winesburgh's role was reclassified to Business Manager. Plaintiff cites the wrong attachment. Exhibit I does not support the allegations in paragraph 44.

45. The University admits that Debbie Corey is a white female over the age of 40 and that she was promoted in May of 2019. The University denies all remaining allegations in paragraph 45. Plaintiff cites the wrong attachment. Exhibit I does not support the allegations in paragraph 45.

46. The University admits that Kelsey Battles is a white female under the age of 40 and that she was promoted in February of 2021. The University denies all remaining allegations in paragraph 46.

47. The University admits that Brandon Pratt is a black male under the age of 40 and that he was promoted around November of 2021. The University denies all remaining allegations in paragraph 47.

Exhibit 36 of 13

7

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | Jones, Sandra Y |
| **Sent:** | Wednesday, October 13, 2021 8:04 AM |
| **To:** | Eppinger, Cathy |
| **Subject:** | Facilities Charge Aug 2021 |

Could you please email me a copy of the facilities charge in the amount of ▮▮▮▮ for account number ▮▮▮▮▮▮ so I can attach it to my electronic ledger reconciliation?

Thanks so much
Sandra


Sandra Jones
Business Manager/ Dean's Assistant
College of Health, Education and Professional Studies (CHEPS)
540 McCallie Bldg (CSOB), Room 281, Dept. 4254
Chattanooga, TN 37403
(P) 423-425-2255
(F) 423-425-4044
Sandra-Jones@utc.edu
utccheps@utc.edu

GO MOCS!

← YEAr 2021

Exhibit 36 of 13

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | Jones, Sandra <Sandra-Jones@utc.edu> |
| **Sent:** | Tuesday, July 14, 2015 4:25 PM |
| **To:** | Eppinger, Cathy; Rutledge, Valerie C |
| **Cc:** | McDonald, Susan |
| **Subject:** | RE: Requesting an Annual day - Wednesday - July 15, 2015 |
| **Attachments:** | Eppinger Leave Form_ 2015 July (2).pdf |

*Sandra Jones, CPS*
*Administrative Specialist III*
*Office of the Dean – College of Health, Education and Professional Studies*
*215 Hunter Hall – Dept. 4254*
*The University of Tennessee at Chattanooga*
*615 McCallie Avenue*
*Chattanooga, TN 37403*
*Sandra-Jones@utc.edu*
*423-425-2255 phone*
*423-425-4044 fax*

← 2015 - year

---

**From:** Eppinger, Cathy
**Sent:** Tuesday, July 14, 2015 2:55 PM
**To:** Rutledge, Valerie C
**Cc:** McDonald, Susan; Jones, Sandra
**Subject:** Requesting an Annual day - Wednesday - July 15, 2015

Valerie,
Something unexpected came up that will require me to take off Wednesday, July 15, 2015. I have attached my leave request form for your signature. I apologize for the short notice.

**Thanks,**

**Cathy Eppinger**
**Administrative Assistant III**
**Occupational Therapy Department**
**The University of Tennessee at Chattanooga**
**Dept. 3103, 100 Davenport Hall**
**615 McCallie Avenue**
**Chattanooga, TN 37403**
**Office: 423.425.2357**
**Fax:423.425.2380**


THE UNIVERSITY OF TENNESSEE AT
CHATTANOOGA

Exhibit 36 of 13

**From:** Bonnington, Nikki
**Sent:** Thursday, August 14, 2014 5:01 PM
**To:** Atkins, Amanda; Boyd, Nancy; Corey, Debby; Eaves, Elizabeth; Eppinger, Cathy; Giles, Debbie; Melnik, Jeffrey; Stephanos, Joanna; Jones, Catrina; Pearse, Lindsey Elizabeth; Roensch, Doris; Rosano, Michelle; Blackburn, Sarah; Shelburne, Di; Tate Jackie (tate_jackie@HCDE.ORG); Budan, Wanda; Wentworth, Martha J; Jones, Catrina; Fitzpatrick, Marilyn; Knight, Ashley; Coller, Alicia
**Cc:** Liguori, Gary; Sherr, Michael; Johnston, Linda; Moody, Dana; Gamble, Anne; Huckabay, Hunter; Ingram, Debbie; Jones, Sandra; Rutledge, Valerie C; Smith, Chris; McDonald, Susan; Storey, Perry; Hornsby, Cindy; Cole, Sandy; Boykin, Twyler L; Brownlee, Belinda
**Subject:** Upcoming Trainings


<u>Open IRIS Lab</u> I will be setting a date soon and I am going to try Thursday mornings this fall. The next session will be centered on Personnel Changes and Payroll E-Forms. I will send out another note when this date is set.

<u>Microsoft Office Training</u> - Word, Excel, PowerPoint etc.-
Barbara Webb has been conducting Word and Excel trainings. Check out her website to look for upcoming dates. She also has some tutorials on her site.
http://www.utc.edu/information-technology/departments/security-and-projects/training.php

<u>Digital Signatures/Adobe Forms Training will be coming soon</u>.
I will request all of you who do not currently have Adobe Pro to put in a work order with IT to get it put on your computer. Adobe Pro is needed for digital signatures as well as is the ability to create an Adobe form. It is free for each of you. To get Adobe Pro installed on your computer click here:
https://helpdesk.utc.edu/MRcgi/MRhomepage.plUSER=&PROJECTID=1&MRP=0&OPTION=none&WRITECACHE=1&FIRST_TIME_IN_FP=1&FIRST_TIME_IN_PROJ=1&dispatch_script=MRlogin.pl&. Then click on "New Request" and login using your UTC ID and password and request Adobe Pro be installed on your computer. This training should be taking place in September, once everyone has the needed software installed who would like to attend.

RTR Training will be coming soon as well!

I will send out this reminder again as dates are set. Thank you!

*Nikki Bonnington*

**Budget Specialist**
**College of Health, Education and Professional Studies**
**The University of Tennessee at Chattanooga**
**Dept. 4254, 201B Hunter**
**615 McCallie Avenue**
**Chattanooga, TN 37403**
**Office: 423.425.2133**

Exhibit 36 of 13

# FOOD SERVICES ACCT #E048205

King, Mary Lee <mary-king@utc.edu>
8/1/2022 9:49 AM

To: Eppinger, Cathy

Good morning,

I am working on my JUN 2022 Ledger reconciliations, and I need the Facilities Maintenance billing statement for account #E048205 – "1st half – June 2022" for $2,260.66. Can you please send me that document?

Thank you!

*Mary Lee King*

Assistant Director
Auxiliary Services Mocs Card, Dining and Vending Services
Administrative Building, Room 205E
Dept. 3964
423.425.5819
mocscard@utc.edu

THE UNIVERSITY OF TENNESSEE
CHATTANOOGA

Exhibit 36 OF 13

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | Wells, Michal |
| **Sent:** | Thursday, April 28, 2022 1:05 PM |
| **To:** | Caldwell, Rebekah; Eppinger, Cathy |
| **Subject:** | RE: Work Order W-47656 Charges |
| | |
| **Categories:** | High Important |

Rebekah,

That charge was when the technician went out to make their initial evaluation of the work to be done.

Cathy,

Please credit Rebekah's account for ▓▓▓ and put the debit under ▓▓▓▓

Thank you.
Michal

**From:** Caldwell, Rebekah <rebekah-caldwell@utc.edu>
**Sent:** Thursday, April 28, 2022 11:41
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Cc:** Wells, Michal <michal-wells@utc.edu>
**Subject:** RE: Work Order W-47656 Charges

Great!  I apologize, the document I received said if I had any questions to contact you.

Thanks,

*Rebekah Caldwell*
Business Manager
The Honors College
Guerry Center Room 211
615 McCallie Ave
Dept. 1101
Chattanooga, TN 37403
423-425-4128


THE UNIVERSITY OF TENNESSEE
CHATTANOOGA
HONORS COLLEGE

**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Thursday, April 28, 2022 11:24 AM
**To:** Caldwell, Rebekah <rebekah-caldwell@utc.edu>

*Exhibit 3b of 13*

| | |
|---|---|
| **From:** | Caldwell, Rebekah <rebekah-caldwell@utc.edu> |
| **Sent:** | Wednesday, May 10, 2017 10:52 AM |
| **To:** | Huffstetler, Kim; Long, Susan; Story, Jared T; Eppinger, Cathy; Cardwell, Susan; McKinney, Teresa; Carmichael, Sheri; Walker, Rebekah; Pickard, Kevin; Bearbower, Terri; Williams, Tracey; Perkins, Marion; Derrick, Laneeta; Laster, Ann; Price, Lisa; Nixon, Toya; Ricks, Peggy; Waugh, Richard; Napoleon, Willkenia; Sanderson, Beth; Williams, Cindy; Karaky, Kellie L; Knowles, June Knowles; Campbell, Amy; Thomas, Sharon; Carmichael, Sheri; Price, Lisa; Williams, Cindy; De Guzman, Peen; James, Andrea; Gutshall, Susan; Grothe, Heather |
| **Subject:** | Travel Training Learning Lab May 19, 2017 |
| **Importance:** | High |

Good morning,

I have been advised that you have signed up for the Travel Training Learning Lab on May 19th and I wanted to reach out to you for your input on the training session. I am preparing a travel training presentation for the event; however, I wanted to see if there was a specific topic that you felt like would be the more beneficial travel training for this lab. Please respond if you have any thoughts or ideas for the training.

*Thanks,*

*Rebekah Caldwell*
*Accounting Specialist II*
Accounting Services
615 McCallie Ave.
Chattanooga, TN 37403
Dept 5905 / Race 207
423-425-4537 (Phone)
423-425-4682 (Fax)


THE UNIVERSITY OF TENNESSEE
CHATTANOOGA


Exhibit 36 ■ of 13

2012-100

# THE UNIVERSITY OF TENNESSEE
## POSITION DESCRIPTION QUESTIONNAIRE (PDQ)

**POSITION INFORMATION:**

Name of Current Holder (if occupied):

IRIS Position Number: 50157864

Position Title: Admin Asst III

Personnel No.:

Pay Grade: 34

SEP 6

Job Title:

Name of Supervisor: Dept. Head Occupational Therapy, Susan McDonald Phone: 423-425-5759

Responsible Cost Center Number and Name: ~~EO4-4844~~ E044040

Department Contact: Susan McDonald    Email address: susan-mcdonald@utc.edu
Phone: 423-425-5759

---

**REASON FOR EVALUATION:**

_X_ New Position

__ Reclassification Request (Significant Change in Duties)

__ Reorganization

__ Standard Review Cycle

__ Vacant Position
     Name of Last Incumbent:

__ Other (Please Specify):

---

**HR/PERSONNEL USE ONLY:**

Analysis:     KH _____     PS_____     ACC_____

Total Points: _____

Job Title: _Admin Support Asst III_     Pay Grade: 34

Job Family: _____

FLSA Category: ___Exempt    ✓ Non-Exempt

Comments:

Exhibit 36 OF 13

1

| Name of Current Holder (if occupied): | Position No.: |
|---|---|

## A.   POSITION SUMMARY:

**Why (or for what reason) does this position exist?**
The general purpose of this position is to provide information, perform secretarial bookkeeping functions, and support to faculty and students. This position will be the initial contact for clientele and help with the execution of the Occupational Therapy department. This position will require in-depth knowledge of the department programs.

## B.   MEASURES OF IMPACT:

**What areas does this position impact? (Mark all that apply):**

X☐ Program                          X☐ Campus/Institute
X☐ Department                    X☐ University
X☐ Division/College            X☐ External to the University

**Describe the level of responsibility this position has in the area(s) checked above.**
**Program:** Coordination and direction for the general administration of the UTC OT program. This position assumes the administrative responsibilities for the OT department.
**Department:** Maintains efficiency for the department, including support to faculty and students.
**Campus/Institute:** Works with other offices on the UTC campus to provide a desirable atmosphere and efficient service for students, administration, technology, facilities, maintenance, accounting, payroll, enrollment services, student academic services, grants and contracts, etc.
**University:** Interacts with other offices, works with faculty and staff as well as other UT campuses to ensure the success of operating the OT department.
**External to the University:** Works efficiently with contractors, community service providers, partners of the department, fieldwork sites and prospective students.

**What type of budget impact does this position have on the area(s) for which it is responsible?**

☐ Full authority to commit funds (Explain)*                   Size of budget impacted _____
X☐ Effective recommendations to commit funds (Explain)*   Size of budget impacted _____
X☐ Maintain or audit funds committed (Explain)*               Size of budget impacted _____
☐ Little or no budget responsibility

**\*Explanation:**
\* Reconciles procurement card
\* Makes recommendations regarding the purchase of office equipment, furniture, software supplies, etc.
\* Maintains financial records & coordinates financial issues with College Business Manager
\* Reconciles accounts, troubleshoots problems and determines resolution, provides management reports.

## C.   POSITION DUTIES:

**What are the essential functions and responsibilities of this position (please indicate approximate percentage of time devoted to each function)?**

| Function/Responsibility | % of Time |
|---|---|
| **Administrative Support:** | **60%** |

Answers the telephone and greets visitors. This communication includes significant interaction with individuals outside the department and University
- Acts as liaison to off-campus organizations and individuals

Exhibit 36 of 13

- Handles highly sensitive, confidential, and/or political issues and is charged with safeguarding information accordingly.
- Independently researches, analyzes, and compiles information to prepare reports, handle complaints, or resolve problems.
- Attends departmental meetings and maintains systematic records of meetings
- Functions as the purchasing agent for the OT department
- Functions as the payroll coordinator for the OT department
- Reviews and prepares timesheets for faculty and staff in the OT department
- Ensures that the annual inventory for equipment is completed
- Implements personnel guidelines and procedures, ensures compliance with affirmative action policies on recruiting/hiring of faculty
- Performs record management functions for the OT department
- Maintains departmental operating, functional and fiscal procedures
- Interpretation and implementation of University administration decisions/policies affecting the OT department
- Makes travel reservations, processes travel requests and follows up on paperwork
- Researches, compiles, and organizes materials for the department heads use in problem resolution.
- Monitors budget to ensure expenditures are not exceeding limits; assists in ways to meet expenses
- Independently plans and implements complex visible events requiring application of PR skills (Advisory Board meetings, Student orientation, clinical fieldwork meetings, white coat ceremony, etc.)
- Makes recommendations for improvements of departmental databases.
- Assists in the establishment and implementation of the policies and procedures for accomplishing goals and objectives set forth in the departmental Strategic Plan
-

**Academic Support:**                                                                           **40%**
* Schedules meetings, coordinates travel arrangement and itineraries for OT faculty
* Files confidential information
* Arranges schedule of appointments for the Department Head, exercising discretion in committing their time and in referring callers or visitors to other personnel as appropriate
*Provides support for Fieldwork Coordinator
* Assists with grant and research support as needed
* Provides ongoing clerical and technical assistance including data entry for accreditation process
* Maintains student program files consisting of official and confidential matters
* Serves as initial point of contact for the OT department, responds to questions and concerns from students, parents, and community organizations.
* Provides limited advising (in consultation with department faculty) to students in terms of general education and program requirements
* Responsible for scheduling logistics related to numerous departmental activities and events both on-campus and in the larger community


**D.    DECISIONS:**
        **What types of decisions does this position make?**
* The individual will determine extent of caller/visitor issue and handles issues
* Determines room, catering and logistical arrangements for departmental events
 * Responsible for maintaining adequate amounts of office supplies and other academic support supplies.
 * Collaborates with the department head for in accountability for making purchasing decisions.
 * Resolves conflicts due to equipment failures.
 * Problem solves in terms of software and computer equipment, contacting outside assistance when needed to sustain faculty support system.
 * As information is channeled through office, makes appropriated individuals aware of changes, updates and impending deadlines.

Exhibit 3C OF D

* Initiates maintenance repairs of workspace.
* Makes decisions about the best way to communicate information that students, employees, and visitor's need over the telephone and when come into the office.
* Gathers information in order to be able to discern who might best be able to help them.
* Make decisions about the prioritization of departmental work responsibilities so that all work is completed in a timely manner.
* Make decisions about the handling of phone calls as to urgency and level of expertise needed.
* Assists in the development and updating of the departmental website

**What types of decisions are referred to others?**
Decisions that fall outside the established departmental policies and procedures
Major budget/expenditure decisions
All bookkeeping and personnel decisions are made according to University policies and procedures which is advised by the Dean's office

**How are decisions implemented?**
**Guidance is given by the department head as to the outline of the decision to be implemented. The policies, instructions and guidelines are available through the University system.**


E.    **SUPERVISION:**
      **What types of supervisory responsibility does this position exercise?**

      ☐ Hiring, disciplining, supervising, granting increases (Explain)*
      ☒ Effective recommendations in hiring, etc. (Explain)*
      ☒ Providing work direction to a group of employees (Explain)*
      ☐ Assisting others by providing guidance (Explain)*
      ☐ Little or no supervisory responsibility

      **\*Explanation:**
      This individual would supervise student assistants, and/or temporary staff.
In the interview process, evaluate technical and clerical skills and make recommendations for hiring
Provide supervision to temporary workers, student assistants (work study) students, and provide direction for graduate assistants to best integrate into departmental budget and goals.


      **Number or employees/students that this position supervises:**

      \_\_\_\_\_  Exempt employees              <u>2-4</u> Students

      \_\_\_\_\_  Non-exempt employees          \_\_\_\_\_ Others (Explain)*

      **\*Explanation:**
      **This individual would supervise work-study students and assist in the supervision of graduate assistants.  The number depends on current developmental, research and departmental needs participation and funding.**

F.    **MINIMUM QUALIFICATIONS:**
      **What are the <u>minimum</u> qualifications in terms of education, experience, job skills, and physical requirements of the job which would be required?**

      **Education:  High school graduate or equivalent.  Classes from a community college or vocational/business school in computer and office skills are a plus.  The CPS rating would also be a plus (this would include training in accounting, office management, office technology, ad business administration).**


      **Experience:**

Office type environment of 1-3 years, prior experience in a University setting, working with the public.

    Job Skills:
* Communication; basic computer skills, IRIS skills preferred.
* Strong organizational skills and the ability to work well under pressure and meet deadlines.
* Strong interpersonal skills and the ability to work professionally with persons from varying backgrounds with varying degrees of experience.
* Demonstrated working knowledge of computer software, including word-processing, database, and spreadsheets; i.e. proficiency in current computer applications
* Basic knowledge of working with budgets and or bookkeeping
* Ability to prepare professional memos, reports, and other types of professional correspondence.
* Ability to deal sensitively and professionally with students presenting various needs and concerns.

* Requires a high level of communication, interpersonal, computer and analytical abilities.

    Physical Requirements:  (Please complete attached chart)


G.    ADDITIONAL INFORMATION:
    Please provide any additional information you believe will assist in understanding this position:

    Since this position often is the first contact with the public, the individual has significant impact on the perception of the University.  It is important to have familiarity with administrative units at UTC for appropriate referral for incoming calls or face to face encounters.  The position also has a variety of job duties that entail one to learn efficiently and perform the job duties accurately.

> *Attach the Departmental Organizational Chart prepared by your department with names and titles (include to whom this position reports, others who report to the same individual, and who reports to this position).

H.    APPROVAL:
    This Position Description Questionnaire (PDQ) has been reviewed by the individuals whose signatures appear below, indicating that the PDQ accurately reflects the job content of the position:

_____   _____   _Susan S. McDonald_  _9/5/12_
**Employee Signature**       **Date**      **Supervisor's Signature**    **Date**

_____   _9/5/12_
**Dean, Director or Dept Head**    **Date**


## PHYSICAL REQUIREMENTS DEFINITIONS

Exhibit 36 of 13

20022566

## University of Tennessee at Chattanooga

2006-290

# UT
## CHATTANOOGA

# Position Description Questionnaire

**Reason for evaluation:**

ADMIN SUPT ASST III    3+

PRPSI    135505
POO # 20022566

- [ ] New position
- [ ] Reclassification request (significant change in duties)
- [x] Periodic Personnel Services review
- [ ] Vacant position          Last incumbent:
- [ ] Other: (Please specify)

| Current Position Title: | Admin Support Asst III. | Position % Full Time: | 100% |
|---|---|---|---|
| Position Incumbent: | Nancy M. Davis | Personnel Number: | 135505 |
| Incumbent's Phone Number: | (423) 425-4018 | Department Mail Code: | 395 |
| Responsible Account #: | E047201 | Supervisor's Name: | Doug Silven |
| Department Name: | Facilities Planning & Mgmt | Supervisor's Phone Number: | (423) 425-4522 |
| Date Prepared: | 07/09/04 | Date of last PDQ Review: | |

This Position Description Questionnaire has been reviewed by the individuals whose signatures appear below, indicating that the PDQ accurately reflects the job content of the position:

| | Signature | Date |
|---|---|---|
| Incumbent : | | |
| Supervisor: | | |
| Director/Department Head: | | |

**Personnel Services Use Only:**

| | | Hay Analysis: | |
|---|---|---|---|
| Date received: | | Total Points: | |
| Date sent to Evaluation Committee: | | Grade: | |
| Date evaluated: | | | |
| Recommended Title: | | FLSA Category | |
| Director Personnel Services: | | Date: | |
| Comments: | | | |

Pos # 20022566          M-1          NC 02-13-06

Exhibit 36 of 13

# POSITION DESCRIPTION QUESTIONNAIRE

**A. POSITION SUMMARY: Why or for what purpose does this position exist?**

The primary purpose of this position is to provide secretarial and clerical support and related services for the Director of Facilities Operation and Asst. Vice Chancellor of Operations. Initiates and coordinates secretarial/clerical functions according to administrative policies and procedures.

**B. MEASURES OF IMPACT:**

What areas does this position impact? (Please mark all that apply.)

| Program | | Division/College | | The University of Tennessee | |
|---|---|---|---|---|---|
| Department | X | UTC | X | External to the University | |

What type of impact does this position have on the area(s) for which it is responsible?

Entry of all Bi-Weekly time sheets for Facilities Dept. and Campus Law, correctly and in a specified time frame. This has a direct affect on more than a hundred employees. Prompt payment of utility bills is essential to avoid costly late fees, which greatly impacts our budget. Invoices being processed in a timely manner, avoiding late fees. Communicating with vendors on a daily basis. Keytrak drawer in Security, maintaining keys and all data entry, this affects the entire campus. Keystone program. This will impact all individuals requesting keys for access to specified doors.

What type of budget impact does this position have on the area(s) for which it is responsible? (Please check appropriate box in left column and supply additional information requested.)

| | | (Please explain) | Size of budget impacted | $ |
|---|---|---|---|---|
| | Full authority to commit funds | | Size of budget impacted | $ |
| X | Effective recommendations to commit funds | Order and maintain office supplies for the Facilities Department. | Size of budget impacted | $ |
| X | Maintain or audit funds committed | Process utility bills and maintain all records. Assist Asst. V.C. for Operation in billing depts., for utilities. | Size of budget impacted | $ |
| | Little or no budget responsibility | | | |

**C. POSITION DUTIES: Please describe the principal functions and responsibilities of your position and indicate approximate percentage of your time you devote to each function.**

| Principal functions and responsibilities | % of time |
|---|---|
| 1. Process bi-weekly payroll and related payroll documents for more than a hundred employees. Advise and assist supervisors of leave balances for employees in their area. Continually working to improve time reports and all aspects of payroll process. Using many e-forms to complete necessary job at hand. | 20 |
| 2. Process utility bills and maintain utility database. Type and forward secondary water meter readings from Central Energy Plant and the Doctor's Building to the City of Chattanooga Department of Public Works to be used in determining the sewer service charge exemption to be credited to UTC. Monthly billing for campus reimbursable customers. In constant contact with utility companies to discuss billing errors, to gain correct information pertaining to current accounts. | 20 |
| 3. Process and maintain travel documentation for Facilities and Security Departments. Making necessary arrangements for overnight stay, registration for training events, mode of travel, and expense reports upon return. Compose correspondence and type reports for the Director of Operations, Asst. V.C. for Operations, when needed, and other departmental staff. | 10 |
| 4. Provide supervision, training and technical guidance to students assistants assisting in maintaining invoice log in/out, and filing. | 5 |
| 5. Responsible for the departments' incoming and outgoing mail. Distribute to appropriate individuals. | 5 |
| 6. Maintain keys and all data entry for keytrak drawer in Security. Maintain Keystone database, that will track all keys distributed to individuals. | 20 |

Exhibit 36 of 13

**H. ADDITIONAL INFORMATION:** Please provide any additional information you believe will assist us to understand your position.

# ATTACHMENT A: ORGANIZATIONAL CHART



Doug Silver
Director of
Facilities Operations

**Immediate Supervisor**
**(Name and Title)**

**Give names and titles of individuals who report to same immediate supervisor.**

Nancy M. Davis
Administrative Support
Assistant III

**Incumbent Name and Title**

**Give names and titles of individuals who report directly to this position.**

**Staff Support**

Student Worker

| Number of regular positions reporting to this individual: | Number of regular positions reporting to this individual: | Number of regular positions reporting to this individual: | Number of regular positions reporting to this individual: | Number of regular positions reporting to this individual: |
|---|---|---|---|---|
| Exempt: | Exempt: | Exempt: | Exempt: | Exempt: |
| Non-Exempt: | Non-Exempt: | Non-Exempt: | Non-Exempt: | Non-Exempt: |
| Number of other employees: Term (FT): | Number of other employees: Term (FT): | Number of other employees: Term (FT): | Number of other employees: Term (FT): | Number of other employees: Term (FT): |
| Term (PT): | Term (PT): | Term (PT): | Term (PT): | Term (PT): |
| Students: | Students: | Students: | Students: | Students: |

M 4
Exhibit 36 of 13

**D. DECISIONS:**
**What types of decisions does this position make?**

Decide the appropriate level of office supplies to keep on hand.

**What types of decisions does this position refer to others?**

Scheduling conflicts

**How does this position implement decisions?**

Most decisions are based on departmental procedures, University Fiscal Policies and Procedures or University Personnel Policies and Procedures. Some decisions are based on experience.

**E. SUPERVISION: What types of supervisory responsibility does this position exercise?**
**(Please check appropriate box(es) in left column and supply information requested.)**

| | | |
|---|---|---|
| | Hiring, disciplining, supervising, performance evaluation, etc. | (Please explain) |
| | Effective recommendations in hiring, etc. | (Please explain) |
| | Providing work direction to a group of employees | (Please explain) |
| X | Assisting others by providing guidance | Assist student workers with their assigned duties. Providing assistance or technical guidance to other staff. |
| | Little or no supervising | |

**NUMBER OF INDIVIDUALS SUPERVISED BY THIS POSITION (directly or indirectly)**

| Direct Supervision | Number of employees | Indirect Supervision | Number of employees |
|---|---|---|---|
| Regular staff (exempt) | | Regular staff (exempt) | |
| Regular staff (non-exempt) | | Regular staff (non-exempt) | |
| Term employees | | Term employees | |
| Students | 1- 2 | Students | |

**F. MINIMUM QUALIFICATIONS: What are the <u>MINIMUM QUALIFICATIONS</u> in terms of education, experience, job skills, and physical requirements for this position.**

| EDUCATION | High school diploma with some additional business education preferred. Proficient use of Microsoft Word, Windows 2000, XP and Excel. Valid driver's license preferred. |
|---|---|
| EXPERIENCE | Five years experience in office setting with supervisory experience. Interacts with a variety of people requiring experience and skill in written and oral communication. |
| JOB SKILLS | Proficient use of Microsoft Word, Excel, Windows 2000 and XP. |
| PHYSICAL REQUIREMENTS | (Please complete chart in Attachment B ) |

**G. ORGANIZATION: Please complete the attached organizational chart (Attachment A) or attach your current organizational chart.**

M 3

Exhibit 36 of 13

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| EEOC | **494-2022-02365** |
| FEPA | |

| **Tennessee Human Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mrs. Cathy Eppinger | 423-994-3777 | |

| Street Address |
|---|
| 1229 Gunbarrel Road |
| CHATTANOOGA, TN 37421 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| University of Tennessee at Chattanooga | 501+ Employees | |

| Street Address |
|---|
| 615 MCCALLIE AVE |
| CHATTANOOGA, TN 37403 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |
| Race, Retaliation | 04/12/2022 / 09/14/2022 |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I have worked for the above-named entity since 2011. There are more than fifteen employees. During my employment, I was subjected to different terms and conditions of employment, harassed, disciplined and suspended in retaliation. I filed a discrimination complaint with EEOC received my notice of right to sue and filed against the entity in federal court. I was placed on a performance improvement plan and subjected to poor performance ratings although I had not been counseled on the issues prior to being placed on the plan. I was accused of committing a violation when others who have not complained of discrimination are not subjected to the same level of punishment. I was terminated on September 14, 2022. I feel that I have been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mrs. Cathy Eppinger**<br>**09/15/2022**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Exhibit 37 OF 2

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# Forced to Vacate/apply for other opportunities

McDonald failed to find a cause to write me up. Therefore, on June 18, 2014, she called me in the office and stated:

> "I am not Working Out", therefore; she would have to let me go

## My Response:

> We need to schedule a meeting with Valerie Rutledge

Met with both Rutledge/McDonald where I was told to apply for other opportunities. No reason was provided as to why this was necessary.

As always, I did just that. →

| | | UTC At Chattanooga - Job Search | | |
|---|---|---|---|---|
| 1. | Public Safety | Administrative Assistant III | 1300000001A0 | 6/19/2014 |
| 2. | Hamilton County | Secretary | 14000000G | 7/1/2014 |
| 3. | Administrative Assistant III | Student Health Services | 14000000HW | 6/19/2014 |
| 4. | Orientation Administrative Assistant | New Student and Family Programs Office | 14000003Q | 6/27/2014 |
| 5. | Administrative Assistant III | Interior Design | 14000000C1 | 6/27/2014 |
| 6. | Administrative Assistant II | Disability Resource Center | 140000004 | 7/3/2014 |
| 7. | Administrative Specialist II) | Honors College | 14000000NF | 7/1/2014 |
| 8. | Administrative Support Assistant III | Theatre & Speech | 14000000NA | 7/1/2014 |
| 9. | Administrative Assistant I | Graduate School | 14000000F | 7/14/2014 |
| 10. | Admin Support Assistant III, | Public Safety | 1300000001A0 | 6/27/2014 |
| 11. | Senior Admissions Specialist | Admissions | 140000003 | 7/10/2014 |

Exhibit # 38    "front + Back"

# Often McDonald would asked, Cathy are you searching for work?

To limit the constant question, I decided to send her weekly emails of my job search.



**Eppinger, Cathy**

Subject: FW: Cathy's Job search at UTC
Attachments: UTC At Chattanooga Job Search.docx

From: Cathy Eppinger
Sent: Wednesday, July 16, 2014 12:04 PM
To: McDonald, Susan [susan-McDonald@utc.edu]
Subject: Cathy's Job search at UTC

Dr. McDonald,
Please see attachments, I have applied on the following positions and will continue to keep you updated weekly.

Thanks.

Cathy Eppinger
Administrative Assistant III
Occupational Therapy Department
The University of Tennessee at Chattanooga
Dept. 3103, 320 Newport Hall
615 McCallie Avenue
Chattanooga, TN 37403
Office: 423.425.5287
Fax:423.413.2380

THE UNIVERSITY of TENNESSEE
CHATTANOOGA

# CATHY EPPINGER

**Chattanooga, Tennessee 37421 - (423) 994-3777 - Keppingr@epbfi.com**

## PROFESSIONAL SUMMARY

Efficient, accuracy-driven Administrative Specialist III successful at delivering key clerical support to internal teams, customers, vendors, and other stakeholders. Demonstrate success in analytical problem solving and boosting operational efficiency. Bringing 35 years of superior performance in related roles.

## EDUCATION

**Bachelor of Science** – Organizational Management, 5/2006
**Covenant College** – Lookout Mountain, Georgia
**Associate of Applied Science** – Office Administration, 5/2004
**Chattanooga State Community College** – Chattanooga, Tennessee
**Diploma 1982**
**Chattanooga City High School** – Chattanooga, Tennessee

## WORK HISTORY

**Administrative Specialist III, 11/2011 to 9/2022**
**UTC** –Chattanooga, Tennessee
Prepare reports, balance budget, create spread sheets, run monthly reports, enter bi-weekly/monthly payroll time, process utility bills, create requisition, and work successfully with Banner to access information about students. Update spreadsheets to track, analyze and report on performance data for 266+ utilities bills.

- Manage office inventory by restocking supplies and placing purchase orders to maintain adequate stock levels
- Compose external correspondence for utility bills and review documentation to eliminate errors.
- Generate payroll reports for maximum impact and results
- Manage accounts payable
- Execute record filing system to improve document organization and management
- Welcome office visitors warmly and alerted staff to arrivals of scheduled appointments
- Process travel, which includes randomly booking airfare, hotel, and ground transportation

**Customer Service, Billing Analyst/Fleet manager/Dispatcher, 3/2005 – 10/2011**
**U.S. Xpress Enterprises/Xpress Global** – Chattanooga, Tennessee

- Dispatched truck into status positions and resolved driver issues
- Prepared billing statement through data entry system
- Responded to customer request for product, services, and company information

## SKILLS

- AS400, IRIS System, Advance MS Office suite knowledge
- AR/AP, Account reconciliation, Balance budget, Business correspondence
- Spreadsheet management, Workflow planning, Records management, Invoice processing
- Contract agreement preparation, Payroll budgeting, Database management

Exhibit 6 of 3

Exhibit 6 of 3

# Covenant College

The Trustees of Covenant College, upon recommendation of the Faculty, have conferred on

## Cathy Watson Eppinger

the degree of

## Bachelor of Science

in

## Organizational Management

with all the rights and privileges pertaining thereto.

In testimony whereof, witness the Seal of the College and the signatures of its officers at Lookout Mountain, Georgia

May 6, 2006

*Chairman, Board of Trustees*

*Vice President for Academic Affairs*

*President*

*Dean of Records*

"That in all things Christ might have the preeminence" Colossians 1:18

Exhibit L of 3

# Chattanooga State Technical Community College

Chattanooga, Tennessee

The State Board of Regents of the State of Tennessee

Upon the recommendation of the Faculty of the College hereby confers upon

## Cathy Eppinger

The

## Associate of Applied Science Degree

Office Administration

with all the rights, privileges and honors appertaining thereto in consideration of the satisfactory completion of the courses prescribed.

In Testimony Whereof, the Seal of the State and signatures are authorized by The Board of Regents are hereunto affixed.

Done at Chattanooga, Tennessee in the Year of Our Thousand Two.

President

Chancellor, Tennessee Board of Regents

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | McClellan, Anthony |
| **Sent:** | Thursday, July 29, 2021 4:00 PM |
| **To:** | Corey, Debby; McGraw, Corey; Charland, Chris; Hodge, Donnie; Eppinger, Cathy |
| **Subject:** | Work Control Coordinator (Taleo Requisition #21000001FK) |

Just an FYI to my direct reports that the department is hiring a Work Control Coordinator. I believe it's posted on Indeed.com and probably other boards too. If you know someone who is qualified and interested in this position, please ask them to apply.

I've posted some info below. I believe it went live on Tuesday.

# Job details

Job Type
Full-time

# Job Description

Work Control Coordinator, Facilities Planning and Management

- 21000001FK

**Work Control Coordinator (Administrative Associate 3 - MR06)**
**Facilities Planning and Management**
**University of Tennessee, Chattanooga**

The Work Control Coordinator is the primary focal point between the campus and the Facilities Department. As such, this position dispenses departmental information to the campus, serves as a liaison between requesters and the Facilities Department often researching request histories, conducting call backs, and supplying shop personnel with needed information. This position also processes the majority of service requests (thousands per year) and ensures that each is prioritized, assigned to the proper shop, accurately entered the computerized maintenance management system (CMMS), and dispatched to the appropriate shop. The coordinator also ensures all labor (time) is entered and assigned to the proper work order. This position supports conventional campus key system; receiving & routing key requests, notifying customers of status, maintaining a record of issued keys, and receiving and dispatching campus keys. This position assists the Work Control Analyst as the backup to the motor pool position when the primary is unavailable; this is done by scheduling, issuing, and receiving rental vehicles to the campus.

**Duties and responsibilities include:**

- Receive, classify, prioritize, and dispatch service calls & work requests received via e-mail, phone, and radio. Ensure accurate work order data is entered into the CMMS system, assigned a tracking number, and is continuously updated. Surveys, compiles, and validates building physical data and work requirements.
- Provide assistance to campus personnel by offering guidance on departmental procedures, work status, and general information regarding the department's role in campus operations. Additionally, act as the liaison between the customer (campus personnel, contractors, etc.) and the shop supervisors. This may require passing information, scheduling events, coordinating access to restricted areas, etc.
- Distribute, receive, process, and file campus key requests. This also involves receiving and distributing campus keys, contacting customers when keys are ready for pick up, and receiving keys when personnel are no longer authorized access.

Front + Back    Exhibit 39

- Process the departmental daily time sheets. This involves attributing the time each employee lists per job to the proper work order number. Again, because errors often occur on time sheets at the shop level, this position is often forced to do a great deal of investigative work and follow up to ensure accurate records are kept within the system.
- Work to progressively improve the facilities services function of the department. This involves continuously working to improve request forms, customer communication, departmental procedures, etc.

**The ideal candidate will possess the following:**

- Experience in advanced clerical training
- Experience in advanced computer skills with a basic understanding of data base operations
- Skilled in data entry - speed and accuracy.
- Critical thinking and decision-making skills; must be able to exercise good judgment during high stress situations.
- Must be experienced dealing with the public in both positive and negative situation.
- Good communication skills, interpersonal skills, and proper business etiquette are a must; this position is a primary representative of the department.
- Must have good organizational skills and the ability to handle multiple tasks simultaneously.

Review of applications will begin on **August 6th** and continue until the position is filled. Applications received by this date will receive priority consideration.

**Minimum Qualifications:**

High School Diploma, and a minimum of 1 year in customer service role

**Preferred Qualifications:**

Working knowledge of computerized maintenance management systems (CMMS), and basic knowledge of building maintenance operations and terminology.

*The University of Tennessee Chattanooga is an EEO/AA/Title VI/Title IX/Section 504/ADA/ADEA institution. All qualified applicants will receive equal consideration for employment and will not be discriminated against on the basis of race, color, national origin, religion, sex, pregnancy, marital status, sexual orientation, gender identity, age, physical or mental disability, or protected veteran status.*

Anthony McClellan
Executive Director of Facilities Operations
The University of Tennessee at Chattanooga

THE UNIVERSITY OF TENNESSEE
CHATTANOOGA

> → NANO PRO (D:)

Quick access
Desktop
Downloads
Documents
Pictures

| Name | Date modified | Type | Size |
|---|---|---|---|
| Resume_Myra_Armstrong | 3/6/2318 12:37 AM | Microsoft Word S... | 33 KB |

New

Sort ▾   View ▾   •••

Laure

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Tuesday, April 20, 2021 4:07 PM
**To:** Pou, Laure <Laure-Pou@utc.edu>
**Cc:** McClellan, Anthony <anthony-mcclellan@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Hi Laure
I have not had a chance to read my write up... other task at hand (many). However, the subject line
seems odd because UT System Policy HR0525 reads Disciplinary Action is as follows:
Oral Warning
Written Warning
Final Written Warning

My email to Dr. Brown... and my question to you, as well as Julie Brown "will this be a verbal or written
warning" you both said no in our August 12, 2020 meeting, so why is this a final written warning?

**From:** Pou, Laure <Laure-Pou@utc.edu>
**Sent:** Friday, April 16, 2021 4:44 PM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>; McClellan, Anthony <anthony-mcclellan@utc.edu>
**Subject:** Copy of Signed Final Written Warning

Cathy,

As promised, I have attached a copy of the Final Written Warning you signed at the conclusion
of our meeting today. Please let me know if you have any questions for me at this time.

Laure

Laure Pou
Assistant Vice Chancellor
UTC Human Resources
720 McCallie Avenue
Chattanooga, TN 37403
423-425-5742

A written document  was not presented to me at that time, and I strongly believe that it should have. Also, Amanda approached my desk the very next morning, when she revisited the desk phone conversation. How will that be handle?

**From:** Pou, Laure <Laure-Pou@utc.edu>
**Sent:** Wednesday, April 21, 2021 9:56 AM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Cc:** McClellan, Anthony <anthony-mcclellan@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Hi, Cathy.

Thank you for following up with your questions. I talked through the justification for executing a final written warning with you during our meeting on Friday, but I know that was a difficult conversation for you and you may not recall all information that was shared. The information you are seeking is documented in the final written warning memo that was presented to you. I recommend that you review the details of that memo at this time. The following excerpt from the memo addresses the decision to elevate the action to a final written warning:

> *"Following the February 2021 incident and careful consideration of the previous efforts to informally address your inappropriate behavior without success, in March 2021, I began collaborations with the Office of Human Resources to formally address your ongoing pattern of inappropriate behavior in violation of the Employee Code of Conduct. Although regrettable, it was hoped that formal disciplinary action would reiterate the serious nature of your actions and the required change in your work-related behavior necessary to ensure a successful work environment. I wanted, however, to speak with you about the February 2021 incident involving your encounter with Amanda before moving forward with a Written Warning pursuant to the progressive disciplinary process outlined in UT Policy HR0525 - Disciplinary Action. But when I raised the matter during our meeting on April 15, you again engaged in behavior that was extremely inappropriate. You responded to my inquiries in a very disrespectful manner, including stating "every day you walk in here with your face in your butt, and you're supposed to be an example." This behavior is unacceptable and further demonstrates an inability to exercise sound professional judgement and communicate your concerns properly. This incident was documented with Human Resources on the same date.*
>
> *You continue to express your concerns inappropriately and display unprofessional behavior, which violates the expectation that you communicate professionally and respectfully with all staff members. Due to your extremely unprofessional and disrespectful behavior on April 15, this formal disciplinary letter is being elevated to a Final Written Warning pursuant to UT Policy HR0525 -Disciplinary Action, and it will be documented in your personnel file with the Office of Human Resources."*

Exhibit 41 of 6

**From:** Brown, Julie <ynf969@mocs.utc.edu>
**Sent:** Friday, April 23, 2021 4:01 PM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Good afternoon, Cathy.

I'm following up to see if you'd like to meet to discuss the interaction between you and Amanda that you referenced in your email. If so, let me know what possible days and times next week would work for you.

Thanks, and have a great weekend!
Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Thursday, April 22, 2021 12:20 PM
**To:** Pou, Laure <Laure-Pou@utc.edu>
**Cc:** McClellan, Anthony <anthony-mcclellan@utc.edu>; Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Thank you

**From:** Pou, Laure <Laure-Pou@utc.edu>
**Sent:** Thursday, April 22, 2021 10:39 AM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Cc:** McClellan, Anthony <anthony-mcclellan@utc.edu>; Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Hi, Cathy.

The final written warning that was issued to you on April 16 will remain in place. However, I appreciate you sharing your concerns and we would be happy to discuss them further as desired. As you requested when we met on Friday, Julie Brown may serve as your point of contact for discussing concerns at this time. I see in your communication below that you have described an interaction with Amanda and I've copied Julie on this email so she can reach out to you to gather additional information.

Laure

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Wednesday, April 21, 2021 10:07 AM
**To:** Pou, Laure <Laure-Pou@utc.edu>
**Cc:** McClellan, Anthony <anthony-mcclellan@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Exhibit 41 of 6

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Tuesday, April 27, 2021 3:27 PM
**To:** Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Hi Ms. Julie,
Attorney Jacqueline Strong Moss

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Tuesday, April 27, 2021 2:23 PM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Cathy, you stated that you plan to have counsel present. Please clarify who you would like to be present and who you propose to attend with you.

Thanks,
Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Tuesday, April 27, 2021 10:54 AM
**To:** Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Good morning Ms. Julie,
I plan to be present with counsel – need time for meeting.

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Tuesday, April 27, 2021 10:22 AM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Cathy,

Are you available to meet tomorrow afternoon or Thursday afternoon? Also, let me know what time would work best for you, and if you'd like to meet in-person, by Zoom or phone.

Thanks,
Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Monday, April 26, 2021 8:24 AM
**To:** Brown, Julie <ynf969@mocs.utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

When are you available?

Exhibit 41 of 56

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Wednesday, April 28, 2021 11:08 AM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Cathy,

I'm working remotely tomorrow, so I'm available to meet via Zoom or phone anytime tomorrow except 3:00-4:00. If you'd like to meet in person, I'm available Friday afternoon between 2:00 and 3:30. Based on how you'd like to meet and my availability that I've shared, please let me know which day and time will work best for you.

Thanks,
Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Wednesday, April 28, 2021 10:58 AM
**To:** Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Ok, what time works for you tomorrow.

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Wednesday, April 28, 2021 10:56 AM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Hello, Cathy.

The purpose of this meeting is to gather information about your interaction with Amanda. Employees are not allowed to have an attorney present at HR meetings of this nature. If your attorney would like to discuss this matter further, please have her contact UT's General Counsel. Contact information is below:

> Yousef Hamadeh
> Associate General Counsel
> University of Tennessee
> (423) 425-5703
> yousef-hamadeh@utc.edu

If you'd like to proceed with our meeting without your attorney present, then let me know.

Please let me know if you have any questions.

Thanks,
Julie

Exhibit 41 of 6

**From:** Eppinger, Cathy
**Sent:** Wednesday, April 28, 2021 3:48 PM
**To:** Brown, Julie
**Subject:** RE: Copy of Signed Final Written Warning


☺

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Wednesday, April 28, 2021 3:47 PM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

You're welcome, Cathy. Enjoy the rest of your week.

Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Wednesday, April 28, 2021 3:38 PM
**To:** Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Ms. Julie,
Thank you so much.

**From:** Brown, Julie <julie-g-brown@utc.edu>
**Sent:** Wednesday, April 28, 2021 3:36 PM
**To:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

Cathy,

Rosite is not available to meet on Friday. A meeting has been scheduled for Tuesday at 11:00. Please let me know if that day/time does not work for you.

Thanks,
Julie

**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Wednesday, April 28, 2021 11:11 AM
**To:** Brown, Julie <julie-g-brown@utc.edu>
**Subject:** RE: Copy of Signed Final Written Warning

If possible, is it ok for Ms. Delgado/Ms. Nicholle Harris to be in attendance? Friday at 2:00pm works. (in person)

Exhibit 92
41 of 6

Disciplinary Policy

# THE UNIVERSITY OF TENNESSEE

| System-wide Policy: HR0525 - Disciplinary Action | |
|---|---|
| Version: 11 | Effective Date: 4/1/2021 |

## HR0525 – Disciplinary Action

**Topics:**

Unsatisfactory Work Performance Or Work-Related Behavior    Procedures

Gross Misconduct    Forms

Related Policies

To set forth the University's policy for disciplinary action, termination, and appeals. This policy applies to regular and temporary employees (*i.e.*, not faculty or student employees) who have completed any required probationary period.

All regular staff employees, including those hired pursuant to a Limited Duration Appointment, serve on an **at will** basis, meaning that either the University or the employee may end the employment relationship at any time, with or without cause, and with or without notice, unless the University and employee have executed a written contract in accordance with Fiscal Policy FI0420, Contracts. Nothing in this policy alters or affects the at-will status of any employee.

## I. DISCIPLINARY ACTION

1. Philosophy

   The University's policy governing disciplinary action is intended to provide a fair process for communicating performance deficiencies and unsatisfactory behavior to employees. The University seeks to achieve optimal employee performance and to give employees sufficient opportunity to correct deficient work performance or unsatisfactory work-related behavior before further action becomes necessary, unless the employee engages in conduct that is so serious that the employee should not be given the opportunity to correct a deficiency.

2. Definitions

   (A) **Unsatisfactory work performance** is the failure to perform job responsibilities in an acceptable manner.

   (B) **Unsatisfactory work-related behavior** is behavior that disrupts the workplace, compromises the orderly, professional, and satisfactory completion of an employee's job responsibilities, or otherwise violates Human Resources Policy HR0580, Code of Conduct.

   (C) **Gross misconduct** includes the following:
   (i)    Fraud, theft or dishonesty;

Exhibit 7 20 OF 4

Case 1:15-cr-00018-TRM-CHS   Document 4   Filed 12/29/22   Page 73 of 88   PageID #: 793

  (ii) Gross insubordination or refusal of an employee to follow instructions or to perform designated work or to comply with directives of authorized university officials;

  (iii) Willful damage to University property;

  (iv) Falsification of University records;

  (v) Acts of moral turpitude;

  (vi) Reporting for duty under the influence of intoxicants;

  (vii) The unlawful manufacture, distribution, dispensation, possession, or use of alcohol, illegal drugs, intoxicants, or controlled substances (more fully described in paragraph 12(c) of HR0580, Code of Conduct);

  (viii) Misrepresentation of academic credentials (as defined in paragraph 13(b) of HR0580, Code of Conduct);

  (ix) Disorderly Conduct (more fully described in paragraph 10(a) of HR0580, Code of Conduct);

  (x) Behavior or conduct unacceptable to the University or the community at large

  (xi) Any other behavior of a similar nature and severity as those listed above.

 (D) TUAPA is the Tennessee Uniform Administrative Procedures Act, the administrative process recognized by Tennessee law for resolution of certain disputes involving state agencies.

 (E) Administrative Judge – a special judge appointed under TUAPA to preside over and administrative hearing in accordance with TUAPA.

3. Progressive Discipline

The University utilizes its annual performance review process and progressive discipline when appropriate to notify employees of unsatisfactory work performance or work-related behavior and to provide an opportunity to correct deficiencies. Although supervisors are encouraged to utilize these steps when appropriate, a supervisor is not required to utilize every step in this process, and a supervisor has discretion to skip or repeat any or all steps if warranted by the circumstances. Immediate termination may be appropriate when an employee's performance or behavior constitutes gross misconduct, violates the law, results in significant property loss or injury, is of such a nature that progressive discipline is not appropriate, or if continued employment is otherwise not in the best interest of the University.

The steps in the progressive discipline process are as follows:

 (A) Verbal warning (to be documented by the supervisor);

 (B) Written warning;

 (C) Final written warning;

 (D) Suspension, either with or without pay; and

 (E) Termination.

NO WARNINGS- WRITTEN GIVEN

4.  Disciplinary action of any kind should be taken with attention to fairness and consistency. When disciplining an employee, supervisors should consider the nature of the unsatisfactory work performance or work-related behavior, the past record of the employee, the supervisor's reasonable expectations, and the appropriate action necessary to correct the issue. All disciplinary actions should be presented to the employee, describe the unsatisfactory performance or work-related behavior, articulate the supervisor's expectations, and describe the necessary corrective action the employee must take.

5.  Departments must contact the applicable system, campus, or Institute Office of Human Resources (HR) prior to imposing formal discipline (the steps listed in paragraph 3) to ensure that discipline is appropriate and consistent with University policy. HR must determine that discipline complies with University policy before discipline is imposed. This policy does not limit the discretion of supervisors to informally counsel employees about performance or behavior issues. Informal counseling may, but need not, be documented. Departments may, but are not required to, contact HR prior to providing informal counseling.

6.  At every step in the disciplinary process, a non-exempt employee may request that the employee relations representative assigned to the department be present. Should the assigned representative be unavailable or have a conflict of interest, HR will assign another representative.

7.  Supervisors, with the assistance of HR, may prepare a performance improvement plan (PIP) in conjunction with (1) any step in the progressive discipline process, (2) an employee's annual performance review, or (3) as an independent action. A PIP should specify the supervisor's expectations, the unsatisfactory work performance or work-related behavior, remedial steps that the employee must complete, and a time period during which the employee must demonstrate improvement.

8.  An employee who receives progressive discipline more serious than a verbal warning is ineligible to transfer to another position within the University for up to one year from the date of the most recent disciplinary action more serious than a verbal warning.

II. **TERMINATION**

9.  Termination should be considered only upon a determination by the supervisor, after consultation with HR, that (1) the employee engaged in gross misconduct, (2) additional corrective action would be ineffective or is otherwise not warranted, (3) all other steps of progressive discipline have been followed, and/or (4) termination is in the best interest of the University. The process for terminating an employee is as follows:

Case 1:15-cr-00018-TRM-CHS   Document 92   Filed 12/28/22   Page 75 of 88   PageID #: 795

(A)      Pre-termination meeting: Before terminating an employee, the supervisor or other authorized University official must (i) consult with HR; (ii) advise the employee, orally or in writing, of the reasons why the University believes termination is appropriate, and (iii) provide the employee an opportunity to respond. An employee may present witnesses and other evidence to rebut the allegations, but legal counsel is not permitted to attend.

(B).      Termination letter: If termination is deemed appropriate following the pre-termination meeting, the supervisor, in consultation with HR, must issue a termination letter to the employee. The termination letter should explain the grounds for the termination, the employee's appeal rights, and applicable exit procedures.

10.      An employee may be placed on administrative leave while the University is investigating or addressing allegations of misconduct, or as otherwise permitted by University policies.

11.      During an ongoing investigation of fraud, waste, or abuse by the University's Office of Audit and Compliance or the State of Tennessee Comptroller's Office, management should consult with the Office of General Counsel, Human Resources, and the Office of Audit and Compliance prior to taking any disciplinary action, including termination, against either the individual under investigation or an individual who has provided information relevant to the investigation. See FI0130—Fraud Waste and Abuse. An employee suspected of fraud, waste, or abuse may not resign as an alternative to discharge unless the approval of the system, campus, or institute chief business officer (as appropriate) is obtained in advance.

12.      The university may refuse to accept an employee's resignation and proceed with the termination process if a resignation would not be in the best interest of the University.

13.      Employees who are terminated for gross misconduct (or who resign during an investigation of an allegation of gross misconduct that is later substantiated) will not receive any payout for their accrued annual leave. If there is a pending investigation of gross misconduct at the time of resignation, payout of annual leave will only occur after the investigation is completed, and only if the allegations are not substantiated. Employees terminated for gross misconduct will be ineligible for Consolidated Omnibus Budget Reconciliation Act (COBRA) benefits. The University can withhold a portion of an employee's final paycheck (including accrued leave payout) to recover lost or stolen funds, but it cannot pursue recovery of funds from an employee's retirement benefits.

14.      In the event the University is planning on suspending an employee without pay, the University will hold a pre-suspension meeting, provide notice of the reasons for the suspension without pay, and give the employee the opportunity to respond.

Case 1:15-cr-00018-TRM-CHS    Document 92    Filed 12/28/22    Page 76 of 88    PageID #: 796

## Eppinger, Cathy

| | |
|---|---|
| **From:** | Betters, Jean |
| **Sent:** | Wednesday, May 25, 2022 9:29 AM |
| **To:** | Wood, David |
| **Cc:** | UTC, Facilities Planning - Work Control |
| **Subject:** | RE: Request to reserve the conference room on the second floor of Admin |

Good morning Mr. Wood---

I have reserved the conference room, 202, for your meeting.
Thank you!

Jean Betters, MSIS
Work Control Coordinator
Facilities Planning and Management
400 Palmetto Street, Dept. 3553
Chattanooga, TN 37403
Office: (423) 425-2254

**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Wednesday, May 25, 2022 9:18 AM
**To:** Betters, Jean <bqy322@tennessee.edu>
**Subject:** FW: Request to reserve the conference room on the second floor of Admin

Good morning Jean,
If possible, please assist Mr. Wood as you assisted Michelle Prince with conference room reservations.

**From:** Wood, David <david-wood@utc.edu>
**Sent:** Wednesday, May 25, 2022 8:53 AM
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** Request to reserve the conference room on the second floor of Admin

Good morning, Cathy,

The IT Infrastructure team would like to request to use the conference room on the 2nd floor of Admin from 1:00-2:30 today. Is that something you can assist me with?

Best,

**David Wood | IT Admin/Analyst**

**The University of Tennessee Chattanooga**

423-425-2727 (office) | david-wood@utc.edu

*For current IT status updates https://blog.utc.edu/itstatus/*

1

Exhibit 42 of 8

| | |
|---|---|
| **From:** | McClellan, Anthony |
| **Sent:** | Tuesday, November 16, 2021 3:14 PM |
| **To:** | Eppinger, Cathy |
| **Subject:** | RE: Conference Room |

Thanks.

Anthony McClellan
Executive Director, Facilities Planning & Operations
The University of Tennessee at Chattanooga



**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Tuesday, November 16, 2021 3:09 PM
**To:** McClellan, Anthony <anthony-mcclellan@utc.edu>
**Subject:** RE: Conference Room

Done

**From:** McClellan, Anthony <anthony-mcclellan@utc.edu>
**Sent:** Tuesday, November 16, 2021 1:40 PM
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** Conference Room

I need to use the conference room on Monday, from 2:00pm-3:00pm.
Can you reserve it for me?

Anthony McClellan
Executive Director, Facilities Planning & Operations
The University of Tennessee at Chattanooga



Exhibit 42 of 8

1

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | McClellan, Anthony |
| **Sent:** | Tuesday, November 16, 2021 1:40 PM |
| **To:** | Eppinger, Cathy |
| **Subject:** | Conference Room |

I need to use the conference room on Monday, from 2:00pm-3:00pm.
Can you reserve it for me?

Anthony McClellan
Executive Director, Facilities Planning & Operations
The University of Tennessee at Chattanooga



Exhibit 42 of 8

1

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | UTC Spaces <Spaces@utc.edu> |
| **Sent:** | Wednesday, January 26, 2022 2:45 PM |
| **To:** | Henry, Rob; Eppinger, Cathy |
| **Subject:** | Conference Room Reservation Confirmation |

Greetings!

We are pleased to confirm your reservation! Below you will find the details of your request. If you need to to change or cancel Click Here. All of your requests can be managed under the "My Events" section of Virtual EMS.

Reservation ID: 215227
Group: Facilities Planning and Managerment

| Date | Start | End | Building | Room | Status |
|---|---|---|---|---|---|
| 1/28/2022 | 9:30 AM | 10:30 AM | Administrative Services | Admin 202 | Confirmed Reservation |

This is an automatically generated confirmation. If you have general questions about VirtualEMS, check out our Knowledge Base for walkthroughs and answers to FAQs.

If you have any additional information that you think will help us to assist you, please feel free to reply to this email.

Exhibit 42 of 8

## Eppinger, Cathy

| | |
|---|---|
| **From:** | Henry, Rob |
| **Sent:** | Wednesday, January 26, 2022 2:55 PM |
| **To:** | Eppinger, Cathy |
| **Subject:** | Re: Conference Room Needed |

Thank you so much.

**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Wednesday, January 26, 2022 2:45 PM
**To:** Henry, Rob <robert-j-henry@utc.edu>
**Subject:** RE: Conference Room Needed

Done.

**From:** Henry, Rob <robert-j-henry@utc.edu>
**Sent:** Wednesday, January 26, 2022 12:17 PM
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** Conference Room Needed

Cathy,
I need the conference room Friday morning at 9:30am through 10:30am if it is available.

Thanks,
Rob

Exhibit 42 of 8

**Eppinger, Cathy**

| | |
|---|---|
| **From:** | Eppinger, Cathy |
| **Sent:** | Friday, February 25, 2022 8:38 AM |
| **To:** | West, Danny |
| **Subject:** | RE: Conference Room Reservation Confirmation |

Program issue, void this one too! 

**From:** UTC Spaces <Spaces@utc.edu>
**Sent:** Friday, February 25, 2022 8:36 AM
**To:** West, Danny <Danny-West@utc.edu>; Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** Conference Room Reservation Confirmation

Greetings!

We are pleased to confirm your reservation! Below you will find the details of your request. If you need to to change or cancel Click Here. All of your requests can be managed under the "My Events" section of Virtual EMS.

Reservation ID: 215956
Group: Facilities Planning and Managerment

| Date | Start | End | Building | Room | Status |
|---|---|---|---|---|---|
| 2/25/2022 | 11:00 AM | 12:00 PM | Administrative Services | Admin 202 | Confirmed Reservation |

This is an automatically generated confirmation. If you have general questions about VirtualEMS, check out our Knowledge Base for walkthroughs and answers to FAQs.

If you have any additional information that you think will help us to assist you, please feel free to reply to this email.

Exhibit 42 of 8



**Eppinger, Cathy**

| | |
|---|---|
| **From:** | UTC Spaces <Spaces@utc.edu> |
| **Sent:** | Friday, February 25, 2022 8:52 AM |
| **To:** | Eppinger, Cathy |
| **Subject:** | Conference Room Reservation Confirmation |

Greetings!

We are pleased to confirm your reservation! Below you will find the details of your request. If you need to to change or cancel Click Here. All of your requests can be managed under the "My Events" section of Virtual EMS.

Reservation ID: 215957
Group: Facilities Planning and Managerment

| Date | Start | End | Building | Room | Status |
|---|---|---|---|---|---|
| 2/28/2022 | 11:00 AM | 12:00 PM | Administrative Services | Admin 202 | Confirmed Reservation |

This is an automatically generated confirmation. If you have general questions about VirtualEMS, check out our Knowledge Base for walkthroughs and answers to FAQs.

If you have any additional information that you think will help us to assist you, please feel free to reply to this email.



Exhibit 4 2 OF 8

| | |
|---|---|
| **From:** | Winesburgh, Amanda Winesburgh |
| **Sent:** | Thursday, April 15, 2021 9:29 AM |
| **To:** | Eppinger, Cathy |
| **Subject:** | 2 New Bi-Weekly Payroll Staff |

Good morning Cathy , I wanted to update you on the two new hires that will be turning in bi-weekly payroll to you moving forward. The first entry for Mallory was done by me when you were out the other week, and this most recent one she didn't sign until this Monday and I had thought you had already keyed all the bi-weekly time so I entered hers and Dave ████████ I have let them both know that they need to have their time sheets in the Friday before the pay period ends and will make sure that Danny knows to sign these and get them to you to be entered.

- David ████████. (Personnel # ████ / Position # ████ Temp/ Consultant – ████ ████hourly - reports to Danny West
- Mallory ████████(Personnel # ████/ Position # ████ Facilities Student Assistant – hourly – reports to Danny West

In the future when there are new people being brought on board I will email you as soon as they are active in IRIS, and will direct them to you for time sheet instructions if that works best for you ?

Thanks so much,

Amanda

*Pls. Note:*

— This Monday, April 12, 2021, SEE Eppinger Timesheet Eppinger Worked 8 hours on this Day.

— Stephens' Responsibility is to Notify Eppinger New employees, And Proceeding to Eppinger Stephens' Notified via phone

— Latest to Enter Time is Wednesday, All Admins are aware of this.

— "I thought you had Already Key," Pls. Note: ONCE You Enter Data Entry, You can see it Keyed Not: "ENCROCHMENT" → this is the issue at

| | |
|---|---|
| **From:** | Perutelli, Freddie |
| **Sent:** | Tuesday, May 11, 2021 12:09 PM |
| **To:** | Eppinger, Cathy |
| **Subject:** | RE: Bi-weekly Time Sheets |

Good afternoon Cathy,

The time sheets should be approved by 10:30am, 11:00am at the absolute latest.

Thank you,

Freddie Perutelli
Total Compensation Specialist
University of Tennessee at Chattanooga
720 McCallie Avenue
Chattanooga, TN 37403
Phone: (423) 425-4473
Fax: (423) 425-4574



**From:** Eppinger, Cathy <Cathy-Eppinger@utc.edu>
**Sent:** Tuesday, May 11, 2021 11:34 AM
**To:** Perutelli, Freddie <freddie-perutelli@utc.edu>
**Subject:** Bi-weekly Time Sheets

Hi Freddie,
What is the latest to have time sheets approved on Wednesday?

Thanks,

Cathy Eppinger
Administrative Assistant III
Facilities Planning & Management
615 McCallie Avenue, Dept. 3553
Chattanooga, Tennessee 37403
Phone: 423-425-4018 Fax: 423-425-4749
Cathy-Eppinger@utc.edu





1

# Biweekly Time Report

Employee Name: **Cathy Eppinger**

Personal Number: _____

Weekly Work Hours: **40.0**

Pay Period Ending: **4/25/2021**

Cost Center/WBS: **E047201**

Position: _____

Rate / hour: _____

## Week # 1

| Attend/Absence | 12-Apr Mon | 13-Apr Tues | 14-Apr Wed | 15-Apr Thurs | 16-Apr Fri | 17-Apr Sat | 18-Apr Sun | Total | Code | Special Pay Units Code | Units |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RG1 | 8 | 7 | 8 | 8 | 8 | 0 | 0 | 39 | | | |
| CBT | | 1 | | | | | | 1 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| **Total:** | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 40 | | | |

## Week # 2

| Attend/Absence | 19-Apr Mon | 20-Apr Tues | 21-Apr Wed | 22-Apr Thurs | 23-Apr Fri | 24-Apr Sat | 25-Apr Sun | Total | Code | Special Pay Units Code | Units |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RG1 | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 40 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| | | | | | | | | 0 | | | |
| **Total:** | 8 | 8 | 8 | 8 | 8 | 0 | 0 | 40 | | | |

## Notes:

1) Report all time in hours and hundredths of hours.
2) Use decimals rather than fractions.
3) This report should include absence and attendance hours only for this position.
4) Account for all hours in the entire work week.

The above is a true statement of hour attendances/absences for the Univers Tennessee for the weeks ending on th listed above. Signed and certified to t

## Absence Types

| | | | |
|---|---|---|---|
| ACx | Admin Close (Scheduled) | DHx | Deferred Holiday |
| UACx | Admin Close (Unscheduled) | HLx | Holiday |
| ALx | Annual Leave | MLx | Military Leave |
| FLx | Bereavement Leave | PDx | Personal Day |
| CTOx | Compensatory Time Off | SLx | Sick Leave |
| CLy | Court Leave | VLx | Voting Leave |

x = shift indicator (1,2,3)

| | |
|---|---|
| YCL2 | Call Pay - 2 |
| YCLB | Call Pay - B |
| YCLF | Call Pay - F |
| YCLI | Call Pay - I |
| YCLJ | Call Pay - J |
| YCLK | Call Pay - K |
| YCLL | Call Pay - L |
| YCLS | Call Pay - S |
| YCLT | Call Pay - T |
| ZCGM | Charge Pay - |

## Attendance Types

| | | | |
|---|---|---|---|
| CTBx | Comp Time Banked | | |
| FML | Family Medical Leave | | |
| RGx | Regular Hours | | |
| WKCR | Workers' Comp | | |

Employee Signature _____  Date _____ 4/26/21

Departmental Approver _____ Date _____ 05/03/21



| System-wide Policy: | |
|---|---|
| HR0580 - Code of Conduct | |
| Version: 10 | Effective Date: 10/01/2017 |

**Specific Examples of Prohibited Conduct**

No Code of Conduct can list all prohibited conduct. The following information, which is not all-inclusive, illustrates some examples of specifically prohibited conduct that may lead to disciplinary action, up to and including, termination, as either unsatisfactory work performance or work-related behavior, or gross misconduct, under university policy.

10. **Respect for Persons**:
    a. Disorderly conduct, including, but not limited to, using discriminatory, abusive, or threatening language; fighting, provoking a fight, or attempting bodily harm or injury to another employee or to any other individual or threatening physical action or injury on university property or during university activities; or other conduct that threatens or endangers the health, safety, or well-being of any person.
    b. Violation of any university policy or law prohibiting harassment, discrimination, or retaliation against students or employees.

11. **Respect for Property**:
    a. Willful or negligent damage to university property.
    b. Theft or dishonesty.
    c. Tampering with or wantonly destroying university data, records, or other information; gaining unauthorized access to such information; disclosing confidential information; or otherwise misusing university data or information.
    d. Unauthorized use of university vehicles, mail services, identification and credit cards, telephones, computers, computer equipment, or other university equipment or materials. Computers and computer accounts are provided to employees to assist them in the performance of their jobs. Employees do not have a right to privacy in anything they create, send, or receive on a university computer. The university has the right to monitor, for business reasons, any and all aspects of any university computer system, including employee e-mail.

Case 1:15-cr-00018-TRM-CHS   Document 92   Filed 12/28/22   Page 87 of 88   PageID #: 807

**To:** Pou, Laure <laure-pou@utc.edu>
**Subject:** RE: Meeting - August 2nd

I would like to meet with Chancellor before our meeting, and I would like to record the meeting, is this ok?

**From:** Pou, Laure <laure-pou@utc.edu>
**Sent:** Tuesday, July 26, 2022 12:19 PM
**To:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Subject:** RE: Meeting - August 2nd

Hi, Cathy.

As I have shared previously, I am hopeful that our meeting on August 2 will provide the opportunity for you to seek additional information from Anthony, as your supervisor, regarding the elements of the performance review and related performance improvement plan that you are seeking clarity among. As discussed, Tom and I think this will be an important first step in providing the clarity you are seeking so you may then have an opportunity to determine where your concerns continue to exist so we can discuss appropriate next steps. As always, I am hopeful I can be a helpful resource during these conversations and will use my knowledge of the concerns you have shared to date to help facilitate discussion and navigate concerns.

It is not our practice to engage campus Chancellors or the system President in one-on-one discussions with employees and supervisors. Human Resources will continue to provide support to you during this process and we can discuss appropriate next steps following the August 2 meeting. If you have not done so already, I encourage you to review the email sent to you yesterday from Mike Fitzgerald, Associate General Counsel for UT System, regarding your requests.

Your packet of materials was provided to Anthony today so he may begin review and preparation for our meeting.

Laure

**From:** Eppinger, Cathy <cathy-eppinger@utc.edu>
**Sent:** Tuesday, July 26, 2022 10:00 AM
**To:** Pou, Laure <laure-pou@utc.edu>
**Subject:** Meeting - August 2nd

Good morning,
I would like for Chancellor and/or Boyd be present in this meeting.

Thanks,

Cathy Eppinger
Administrative Assistant III
Facilities Planning & Management
615 McCallie Avenue, Dept. 3553
Chattanooga, Tennessee 37403
Phone: 423-425-4018 Fax: 423-425-4749
Cathy-Eppinger@utc.edu

Exhibit 46